## LIVINGSTON *et als.* v. NOE *et als.*

1. VENUE. *New county.* The venue of a pending suit can only be changed by express statutory authority strictly pursued, and, therefore, an order to transfer a cause to a new county is void, which recites that most of the complainants and defendants are residents of the new county, while the statute requires that all of them shall be such residents.

2. BILL OF REVIEW. *New matter. Evidence must be stated.* To sustain a bill of review for new matter, it is not sufficient to allege that complainant expects to prove certain facts; he must state the evidence to establish them.

3. SAME. *Errors apparent. Evidence cannot be looked to.* Errors apparent for which a bill of review will lie are errors patent on the face of the pleadings and decrees, without looking to the evidence, or to any new evidence.

4. ADMINISTRATOR. *Sale of realty for partition. Heir liable. When.* Where the administrator joins the heirs in a petition to sell land for partition, admitting that he has personal assets sufficient to pay debts, he and his successors in office cannot afterward subject the land itself to the payment of debts, but can only hold the heirs liable for the value of the land sold, each heir for his share.

Livingston *v.* Noe.

5. SALE OF MINOR'S REALTY. *Cannot be impeached. When. Purchaser bona fide.* A decree for the sale of an infant's land in a case to which he is a party, and over which the court has jurisdiction, cannot be so impeached by the infant, either by a bill of review or an original bill, as to prejudice the interests of a *bona fide* purchaser for value, and without notice.

### FROM GRAINGER.

Appeal from the Chancery Court at Rutledge. H. C. SMITH, Ch.

McFARLAND for complainants.

NETHERLAND, SHIELDS, FULKERSON, and HENDERSON & JOUROLMAN, for defendants.

COOPER, J., delivered the opinion of the court.

A preliminary point is presented in this case, that an order was made by the Chancery Court of Grainger county, in which the cause was then pending, to transfer the record to the Chancery Court of Hamblen county, a new county, under the 14th section of the act of June, 1870, ch. 6, establishing that county, and under the Code, sec. 84. Both the act and the Code, however, require that the suit shall be between parties residing within the limits of the new county, to authorize the transfer. The order under consideration recites that "most of the complainants and defendants" reside in Hamblen county. The venue of a pending suit can only be changed under express statutory authority, which must be rigidly pursued. *Ex parte Williams,* 4 Yer., 579; *McHenry* v. *Wallen,* 2 Yer., 441; *Weakley* v. *Pearce,* 5 Heis., 401; *Walker*

v. *Snowden,* 1 Swan, 193. The order was not justi-
fied by the statute, and was void.

Jesse Livingston died in 1860, leaving a widow,
six sons, Wesley, Galen, Alfred, John, Isaac, Jacob,
one daughter, the wife of Wm. Chaney, and a grand-
son, W. N. Lacy. James K. McAnally became the
administrator of the decedent's estate, and, deeming
the personal property other than slaves ample to pay
debts, joined the heirs in a petition to the County
Court to sell land and slaves for division, and as
commissioner of the court, sold the slaves and paid
out the proceeds. One R. P. Moore seems, as com-
missioner, to have sold the land and paid out the
proceeds. The lands in Grainger county, after allot-
ting dower, were purchased by Wesley, Alfred, and
Galen, and the lands in Overton by Jacob and Isaac.
McAnally died in 1863, and, in 1865, Parrot Godwin
administered on his estate, and also became adminis-
trator *de bonis non* of Livingston's estate. In 1866,
he resigned the latter administration, and John F.
Noe was appointed in his place. On the 16th of
October, 1866, Noe, as administrator, filed his bill
against the heirs of Livingston to sell lands to pay
debts. At that time Wesley had died without other
heirs than his brothers and sister and nephew, Lacy;
Galen, Alfred, Isaac, and Mrs. Chaney had also died,
each leaving children. These children, together with
John and Jacob, the still living children of Jesse
Livingston, were made defendants, as was also D. S.
Noe as administrator of Wesley, and W. N. Lacy.
The allegation of the bill is that Galen, Alfred, Isaac,

and Mrs. Chaney have been dead more than six months, and no one can be found to administer on his or her estate. The proceedings in the County Court are mentioned without being impeached, the bill merely saying that the sales of the land and slaves were made by consent of the heirs as complainants, or defendants, and that they knew at the time that the debts of the estate were unpaid. The prayer of the bill is that the land, or so much thereof as is necessary, be sold to pay the debts, or that the defendants be required to refund *pro rata*.

Such proceedings were had in this suit that an acccunt of the administrations of McAnally, Godwin and Noe was taken, the debts of the estate ascertained, showing an excess over the personal assets, and a decree rendered for the sale of the lands descended. The lands were sold; the lands in Grainger county to Thomas Hill, a stranger, and the lands in Overton county to Jacob Livingston. The sale was confirmed, and titles divested out of the parties and vested in the purchasers respectively. But before the payment of the whole of the purchase money, or the disposition of any part of it, the bill before us was filed on the 9th of January, 1872.

The complainants to this bill are the children, all infants, of Galen, Alfred, and Isaac Livingston, the children of Mrs. Chaney, also infants, the surviving husband of Mrs. Chaney, and Jacob Livingston, against the administrators of John F. Noe, he having died, Jonathan L. Noe, administrator *de bonis non* of Jesse Livingston's estate, Honor Livingston, the widow of

Jesse, W. N. Lacy, John Livingston and Thomas Hill. The bill was filed in a threefold aspect—as a bill of review to review the proceedings in the previous case for error apparent, as a bill of review for newly discovered evidence, and as an original bill for fraud. The administrators of Jno. F. Noe and Thos. Hill plead the former decrees to the bill as a bill of review, and demur to the opening of the enrolment, and have answered the bill so far as it was an original bill.

The main object of the bill as an original bill is to surcharge and falsify the accounts of John F. Noe as administrator, on the ground of items of charge and discharge wrongfully claimed or suppressed by him with knowledge of the facts. The bill shows that Noe was examined on the taking of the account, and it does not appear that the report of the master was excepted to. It is doubtful whether the allegations show a *mala mens*, a meditated and intentional contrivance to keep the opposite party and the court in ignorance of the real facts, which has been thought essential to sustain a bill for fraud. *Patch* v. *Ward*, L. R., 3 Ch. App. 203. But the charges of fraud are denied in the answers, and no proof has been taken to sustain them.

The new matter upon which a bill of review is rested must be so stated as to enable the court to determine that the evidence, when produced, will be controlling, and that the party has been guilty of no negligence in not discovering and producing it on the former hearing. It is not sufficient that the complainant expects to prove certain facts, but he must

state the exact evidence to establish them. *Young* v. *Forgey*, 4 Hay., 189; *Burson* v. *Dosser*, 1 Heis., 761; *Dexter* v. *Arnold*, 5 Mason, 303.

The present bill simply avers that the complainants will show the following errors of fact in the master's report, setting out the items of supposed error. There is no statement of the evidence relied on to establish the errors. The bill does mention incidentally a receipt given by Noe to his predecessor in the administration for assets of the estate, but it also shows that this receipt had been spread upon the records of the County Court long before, and was actually on file in the suit sought to be reviewed. The bill is materially defective in those requisites which judicial wisdom has deemed essential in order to prevent interminable litigation. It is, in reality, a bill to retry the matters of account, and not a bill of review proper.

Errors apparent, for which a bill of review will lie, are errors patent on the face of the pleadings and decrees without looking to the evidence, and, of course, without requiring new evidence to be introduced to show them. *Eaton* v. *Dickinson*, 3 Sneed, 401. Eight of the ten specific errors relied on by the bill require the court to go outside of the pleadings and decrees, and seven of these eight to go behind confirmed reports not excepted to, in order to determine upon their existence. The remedy was by appeal or writ of error, not by bill of review.

The two remaining errors are, that decrees were rendered and accounts taken without the infant com-

plainants being represented by guardian *ad litem*, and the accounts without notice to them or any of them. These errors are not well assigned so far as the Chaney children are concerned, for their father was appointed their guardian *ad litem*, and filed an answer for them before any decree was rendered or account taken. And the adult complainants are not embraced, and could not join in the assignment. How far individual complainants are estopped to demand relief to which their joint co-complainants are not entitled, is a question not free from difficulty. *King* v. *Spain* v. *Machado*, 4 Russ., 225; *Glyn* v. *Soares*, 3 M. & K., 472. Conceding, however, that the other infants can separate themselves in this regard from their associates, the first report of the master, embodied in the decree of April, 1870, which provides for the proper representation of all the children by guardian *ad litem*, and recites the filing of the answer of the children by him, expressly states on its face that notice was given to the parties, and that they appeared in person or by attorney. And although the infants could not thus appear, yet the guardian *ad litem* could appear either in person or by attorney. The report having been confirmed, with these recitals in it, after the infants were fully represented, the truth of the recitals cannot be called in question by a bill of review for error apparent. So of the positive recitals of that decree, that a guardian *ad litem* was appointed for the infants, that he accepted the appointment, and that the infants filed an answer by him. And even if the decree of a previous term ordering the account,

and declaring generally that in the event the administrators of Livingston's estate had not wasted assets, the complainant was entitled to the relief sought, was erroneous as to the infants not then represented by guardian *ad litem,* the error is probably one which cannot be reached by bill of review, and at any rate, a review of that decree would be of no avail, the subsequent decrees not only repeating the principles, but formally adjudging the rights of the parties and ordering a sale of the lands descended. Moreover, it does not appear on the face of the record that the infants were aggrieved by the omission, and only errors positively injurious to the party are cognizable in this mode. *Lansing* v. *Albany Ins. Co.,* Hopk., 102. It should always be borne in mind that an appeal, or writ of error, is far more efficacious than a bill of review, and that there is the same saving of persons under disability in the one proceeding as in the other.

It has been the misfortune of the heirs of Jesse Livingston and their children, that the assets on which the original administrator no doubt confidently relied for the payment of debts, were rendered worthless by the war, and that the debts were increased by the accumulation of interest during the same disastrous years. Nothing would probably be gained by opening the accounts taken, and less reluctance need be felt in adhering strictly to the law regulating bills of review. That law, on the soundest considerations and in order to prevent experimental litigation, has determined that no errors can be noticed except those which are specifically pointed out by the bill. *Moore* v. *Moore,* 2

Ves., 598; *Green* v. *Jenkins,* 1 DeG. F. & J., 470, 474; *LaGrange and Memphis R. R. Co.* v. *Rainey,* 7 Col., 447.

After taking the necessary administration accounts, ascertaining the debts, and finding that the personal assets would fall short of paying the debts, the court declared that the complainant was entitled to sell the lands descended for the satisfaction of the liabilities, and to a lien on the lands therefor because the heirs had purchased with knowledge of the existence of the creditor's claims, and decreed "that each tract should contribute its proper proportion of the said sum on the basis of the prices paid at the sale under the decree of the County Court." The master was directed to sell on one year's credit, free from the equity of redemption. He did sell the lands on the 5th of October, 1870, and the sale was confirmed on the 22d of December, 1870, without objection. The lands in Grainger county were sold to Thomas Hill, and the Overton county land to Jacob Livingston, as before stated. The present bill alleges as to these sales that "the purchasers have paid no part of the price, or if paid, the fund has not been disposed of." And it states all the facts necessary to raise the question as to the correctness of the Chancellor's decree, and does impeach it for adjudging that the creditors had a lien on the land.

It is doubtful whether the question is so presented in the specification of errors as to justify its consideration under the bill treated as a bill of review, but the point is, perhaps, not very material. As long

ago as 1720 Lord Macclesfield intimated that an infant might impeach a decree for error apparent by original bill, citing, in support of the suggestion, the opinion of Vernon, the great lawyer of the day, who always advised this course. *Richmond* v. *Tayleur*, 1 P. W., 734; S. C. 2 Eq. Cas. Abr, 516. Accordingly, it is laid down in all our text-books on equity pleading and equity practice, that an original bill in the nature of a bill of review lies when an improper decree has been made against an infant, although without actual fraud or surprise. Mitf., 94; Coop., 98; Welf., 247; Dan., 206; Sto. Eq. Pl., sec. 427. And the doctrine is cited with approval by Milligan, J., in *McGavock* v. *Bell*, 3 Col., 517.

There is error in the decree of the Chancellor in holding that the administrator was entitled to sell the lands descended in satisfaction of the debts, and to a lien on the lands therefor simply because the heirs had purchased under the decree of the County Court, with knowledge of the existence of the unpaid claims. The old rule, under the acts of 1784 and 1789, was, that the lien of the creditor on the realty commenced with the recovery of judgment against the personal representative by virtue of the one act, and with the issuance of process against the heirs under the other. *Smith* v. *Stump*, Peck, 281; *Boyd* v. *Armstrong*, 1 Yer., 55; *Peck* v. *Wheaton*, M. & Y., 353; *Combs* v. *Young*, 4 Yer., 218. What change in the law has been worked by the Code it is not necessary now to determine. The controlling consideration in this case is, that the lands were sold by proper proceedings in

the County Court, to which the administrator was a party, thereby, as well as by a positive assurance to that effect on the face of the petition, admitting that the lands were not needed for the payment of debts, and that the purchasers would acquire good titles. Whatever may have been the rights of creditors directly asserting them, it is clear that the administrator and his successors in office are estopped to call in question the solemn assurances thus made of record. Even a reversal of the proceedings in the County Court would not have affected the title of the purchasers acquired before steps taken to reverse. And *a fortiori*, must the title be good where the proceedings remain in full force and unimpeached. There is a distinction taken in the books between the immunity of a third person as purchaser, and the position of a party who purchases. Freem. on Judg., secs. 482, 483. But this distinction applies to suits *in invitum*, where the successful litigant buys, and can have no application to a suit for partition in which there is no litigation. The relief to which the administrator was entitled was substantially embodied in the alternative prayer of his bill, "or that the defendants be required to refund *pro rata*." That is to say, each of the living children, and each estate of a deceased child of Jesse Livingston, might be required to contribute an equal proportion of the debt remaining after exhausting the personal assets, to the extent of the value of the heir's share in the proceeds of the land sold. Code, sec. 2256. No heir is liable for more than his proportionate share.

The weight of authority undoubtedly is that a decree for the sale of an infant's land to which he is a party, and in a case in which the court has jurisdiction, is so far binding on him that he cannot, either by a bill of review, an original bill, or any other proceeding, impeach it so as to prejudice the interests of a *bona fide* purchaser for value, and without notice. *Winchester* v. *Winchester*, 1 Head., 500; *Bennett* v. *Hamill*, 2 Scho. & Lef., 575; *Wright* v. *Miller*, 1 Sandf. Ch. 103. Our act of 1835, ch. 20, 16, brought into the Code sec. 3186, which provides that the title of a purchaser under a judgment or decree, executed before writ of error obtained and *supersedeas* granted, shall not be disturbed by the subsequent reversal, is only in affirmance of the common law. *Lewis* v. *Baker*, 1 Head, 385; Freem. on Judg., sec. 484. The law requires, however, that the defense of innocent purchaser, as well as any other defense outside of the decree sought to be impeached, shall be pleaded in defense of a bill of review, or of an original bill in the nature of a bill of review. *Gregor* v. *Molesworth*, 2 Ves., 109; *Hartwill* v. *Townsend*, 2 Br. P. C., 107; *Gorman* v. *McCullock*, 5 Br. P. C., 597. In this case no such defense has been made, nor could it have been if the purchase money had not actually been paid when the answer was filed. *High* v. *Batte*, 10 Yer., 335; *Smithcal* v. *Gray*, 1 Hum., 491. But inasmuch as there was no injunction obtained on the filing of this bill to enjoin the execution of the decree sought to be impeached, the purchasers may have since perfected their title and be now in a condition

to make the defense. One of the purchasers is a complainant in the bill, and is necessarily estopped to dispute his co-complainant's right to reverse the decree and set aside the sale to him, but he will be entitled to be repaid any part of the purchase money actually paid by him with interest, and to a lien therefor on the land bought, subject to an account for rents. The defendant, Hill, is in a different position and we can only remand the cause, so far as he is concerned, with leave to the complainants to amend their bill, as they may be advised, on the facts as they now stand, and with leave to Hill to make a new defense. If the sale to him is sustained, the complainants will be entitled to the proceeds of sale as they would have been entitled to the land. And if the sale be set aside, he will be entitled to be reimbursed the purchase money paid with interest, and to a lien on the land bought to secure the same. He will also, in that event, be held to the usual account for rents, and be allowed for taxes paid and permanent improvements.

Whether the land allotted to the widow of Jesse Livingston in dower was sold at the County Court sale, does not appear. It was sold, it seems, to Hill at the last sale. If it still belonged to Livingston's estate at the time of the chancery sale, the title of the purchaser would be good, and the proceeds would go to the creditors.

Nearly all the costs having accrued by reason of the bill having been filed as a bill of review, on which branch of the case the complainants have failed,

and the defendant Hill being in no fault, the complainants will pay all the costs in the first instance, to be hereafter proportioned between them in accordance with their liability for the value of the lands as above, and to be allowed each as a credit upon the value of the lands sold with which each heir or estate may be charged. The creditors are not entitled to hold any heir liable beyond the value of his share of the land sold.