NASHVILLE TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9407.

Circuit Court of Appeals, Sixth Circuit.

June 2, 1943.

---

Garnett S. Andrews, of Nashville, Tenn., for petitioner.

N. Barr Miller, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Helen Goodner, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, HAMILTON, and Mc-ALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review the decision of the United States Board of Tax Appeals (now the Tax Court of the United States), which sustained the Commissioner in holding that the petitioner was not entitled to a deduction from the gross estate of certain items as payments of claims against the estate. The facts, which were stipulated, and as stipulated found by the Board, are as follows:

Caswell E. Rose, hereinafter referred to as the testator, died testate in Davidson County, Tennessee, on December 31, 1936. Item 9 of his will provided: "I give to my two dear cousins, Misses Anna Belle Rose and Evans Rose, who have made my home and cared for me in recent years, in compensation of their kindnesses and services, one hundred shares American Telephone & Telegraph Company stock, (fifty shares each)."

The residuary provision was as follows: "Item 19:—I desire that the business of Caswell E. Rose Co. be continued under the direction and management of my present partner, Mr. Thomas N. Newbill, with the advice of my executor for the period of three years after my death, if so desired by Mr. Newbill, when I desire that my interest in our elevator, capital and business shall be liquidated and my half of the proceeds turned into my estate. The remainder of my estate shall be distributed as independent of all bequests hereinbefore made and as the laws of Tennessee would direct should said remainder have constituted my entire estate, to the legal heirs in consanguinity."

Miss Evans Rose predeceased the testator, and Miss Anna Belle Rose died a few months after his death.

The petitioner, as executor, probated the testator's will in the County Court of Davidson County, Tennessee, on January 16, 1937. On May 19, 1937, it filed a bill in the Chancery Court at Nashville, Tennessee, praying for construction of various items of the will, including Item 9 above quoted, and for "any further instructions or directions which" the court "deems necessary to guide it in the handling and distribution of this estate."

The bill further prayed that the court instruct the petitioner as to what disposition should be made of the fifty shares of stock left by the testator in Item 9 of his will to Miss Evans Rose. A petition was filed in the same case by William Alfred Rose, executor of the estate of Anna Belle Rose and administrator w.w.a. of the estate of Mary Evans Rose, claiming that the stock left to the Misses Rose under Item 9 of the testator's will represented an indebtedness for services rendered to the testator; that the legacy to Miss Evans Rose did not lapse with her death, and

that the estate taxes should be imposed not upon the legatees, but upon the residuary estate. The petitioner filed an answer calling for proof of the allegations of the petition.

The case was heard before the chancery court upon depositions which were in no way controverted. The chancery court entered a decree holding that the legacy to Miss Evans Rose did not lapse; that the two legacies to the Misses Rose constituted a legal claim against the estate, and that the services were non-gratuitous, and ordered the executor to deliver the shares of stock in question, together with dividends, free of all state and federal taxes, to the legatees or their representatives. No appeal was taken and the decree became final. Petitioner delivered the one hundred shares of stock to the executor and administrator of the Misses Rose.

The instant case arises under section 805 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 643, which in its material portions reads as follows: "The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth."

In determining the deficiency, the Commissioner deducted from claims representing debts of the testator the claim of Miss Anna Belle Rose for services as per the decree of the chancery court, $7,200, and the claim of the estate of Miss Evans Rose for services as per decree of the chancery court, $7,200. The Board held that it was bound by the decision of the state court that the legacies were claims against the estate, but declared that there was no basis upon which it could find with any degree of accuracy the reasonable value of the services of the Misses Rose, assumed that the testator's provision was larger because of his affection and beneficence than it would have been in case of compensation for their services alone, and decided that the claims were contracted for an adequate and full monetary consideration to the extent of one-half of each item.

We think that this conclusion fails to accord due recognition to the binding effect of the decree of the state court adjudicating a question of state law. Blair v. Commissioner, 300 U.S. 5, 10, 57 S.Ct. 330, 81 L.Ed. 465. Also it fails to give full consideration to the scope of the pleadings and the decree of the Tennessee court. The prayer of the petition was not limited to the construction of the will, but prayed for general and particular relief as justified by the facts. The petition of the executor of the estate of Anna Belle Rose, and representative of the next of kin of Miss Evans Rose, stated a case in quantum meruit so far as the legality of the claim for services was concerned. It set up the request by the testator, the performance by the Misses Rose, the non-gratuitous nature of the services, and the recognition of the debt by the testator. It prayed not only for a construction of the will to the effect that the legacy to Miss Evans Rose did not lapse with her death, but also that the court instruct the executor of testator's estate to pay the legacies in question free of taxes to the representatives of the legatees or their next of kin. The answer of the petitioner demanded proof as to the alleged request made by the testator to the Misses Rose to leave their home in Pulaski, Tennessee, and come to Nashville, to maintain his home, and as to the point whether the services were gratuitous, and neither admitted nor denied that the testator acknowledged the debt to the Misses Rose, nor that it was his intention in his will to discharge the obligation. The decree of the state court rendered upon the evidence adduced decided in favor of the representative of the Misses Rose all issues in controversy.

No question was raised in the state court as to whether the value of the stock was a reasonable amount of compensation for the services. But in an action for quantum meruit the only amount recoverable is the reasonable value of the services performed, and therefore by implication the question of reasonable value was passed upon. Figured upon a weekly basis, the legacies amount to compensation of about $12.50 a week. Considering that the testator left an estate of about $400,000, the compensation can hardly be called more than reasonable. The state court found that a legal claim existed as to the whole value of the stock in controversy. The Board decided that it existed only as to one-half of the value. The state court found that the services were non-gratuitous. The Board found that they were not shown to be non-gratuitous for one-half the amount. The practical dilem-

ma which results is shown by the circumstance that petitioner, executor of testator's estate, having complied with the order and decree of the state court, and having delivered the stock to the claimants, under the present holding may be liable for the amount of federal taxes now found to be due. Hutchison v. Montgomery, 172 Tenn. 375, 112 S.W.2d 827. But the services performed and the arrangement made between the testator and the Misses Rose were all made in Tennessee and subject to Tennessee law as embodied in the decree of the chancery court, which in this holding followed and applied the settled law of the state. While the presumption of a contract to pay for services will not ordinarily arise between near relations (Taylor and Lincumfelter v. Taylor, Adm'r, 69 Tenn. 67, 71, 83), and a presumption of gratuitous service extends to all relatives living in the same family group, it grows weaker and becomes more easily rebutted as the relationship recedes. Gorrell v. Taylor, 107 Tenn. 568, 64 S.W. 888.

The Misses Rose were merely second cousins of the testator, and they were not, when requested to leave Pulaski and come to Nashville, a part of the testator's family circle. It is significant in this connection that Item 9 of the testator's will specifically states not that they made their home with him, but that "they made my home." The definite request, the uprooting of these women from their home in another part of Tennessee, the uncontradicted testimony as to the extensive and important services, and the numerous declarations of the testator, including those embodied in the will, recognizing that he owed a legal obligation to compensate the Misses Rose, completely establishes the "exceptional circumstances" necessary to rebut the very slight presumption of gratuitous services existing between these distant relatives. Cf. Key v. Harris, 116 Tenn. 161, 171, 92 S.W. 235, 8 Ann.Cas. 200.

We think that under these circumstances, the statement in Blair v. Commissioner, supra, 300 U.S. at page 10, 57 S.Ct. at page 332, 81 L.Ed. 332, is apposite. To derogate from the authority of the state court's conclusion and of the decree that it commanded would be unwarranted in the exercise of federal jurisdiction.

The Board explained its action upon the ground that the federal statute, section 805 of the Revenue Act of 1932, requires that deductions in the case of claims against an estate shall be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. The bona fides of the claim is not questioned. The existence of adequate and fair consideration in money or money's worth was questioned by the Board. Under the statute this element is made the criterion for the deductibility of the claims. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A. L.R. 410; Morgan, Ex'r, v. Commissioner, 309 U.S. 78, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035. But the Board erred in failing to recognize that precisely this issue was passed upon in the decree of the chancery court. The chancery court had by necessary implication decided that the value of the stock is the reasonable value of the services performed. It had specifically held that these claims were supported entirely by a valuable consideration. This is equivalent to saying that they were contracted for an adequate and full consideration in money's worth. Passing upon the question as to the taxability of the stock, the state court had decreed that the legacies should be delivered free and clear of any charges for taxes, state or federal. If the legacies were in part "gifts," as in effect found by the Board, then they were taxable under sections 1259, 1260, and 1296 of the Tennessee Code. The chancellor could not, under these statutes, properly find the legacies not subject to tax in so far as they were gifts. Section 1268, subdivision 4, is also applicable. It reads as follows: "No deduction from the value of the property included in the gross estate shall be allowed on account of any claim against the estate arising from a contract made by the decedent and payable by its terms at or after death unless such claim is supported, in whole or in part, by a valuable consideration, in which event only so much thereof as is the equivalent in money value of the money value of the consideration received by the decedent shall be allowed as a deduction, but the remaining portion shall not be."

The chancellor could not properly have issued the decree which was issued if the legacies were in whole or in part a gift. If the consideration received by the testator was less than the money value of the stock, it was the chancellor's duty so to have found, and to have declared what portion of the value of the stock was sub-

ject to inheritance and state tax under the laws of Tennessee. When the chancellor held that under the law these specific legacies should be delivered "free and clear of any charges for taxes, state or federal, or other deductions of any kind or character," he necessarily found that the claims as a whole were supported by valuable consideration.

The respondent stresses the fact that the decree states "that under said Item 9 of the will the Testator intended to give and did give" the stock in question, "in compensation for their kindnesses and services" to him, and that this justifies the Board's assumption that the compensation was partly for services and partly because of blood relationship and affection. But clearly the use of the above words in the decree is simply a restatement of the terms of the will. The holding of the chancellor is found in the subsequent clause, "that by said bequests he meant and intended to compensate and recompense them and each of them for their services (material and social) to him. * * *" This finding is supported by evidence not controverted either in the state court nor before the Board. It was established that the Misses Rose left their home in Pulaski, Tennessee, and came to Nashville at the testator's request to keep his home for him; that they performed work for over eleven years as housekeepers, supervising the servants and the household, grounds and yard, and the entertainment of friends and guests. We question whether the fact that services performed upon request and under the circumstances of this record, even if partly social, are to that extent gratuitous. As a matter of abstract principle, it would not appear to weaken their case that these women combined with the services of housekeepers and supervisors of the estate the equally important services of hostesses. This is particularly true when we consider that the testator was a wealthy bachelor; that he was the head of the family, fond of entertaining, with a home always open to his family and friends, and that he had no other hostess or housekeeper to carry the burden of entertaining. But however these considerations might appeal to the trier of the facts, we are not authorized, and we think the Board was not authorized, to interfere with the conclusion of the tribunal which heard the evidence and decided the question. The decree, which is

unreversed and binding upon the Board and upon us, specifically holds that there was a legal obligation to the amount of the whole value of the stock.

The decision is reversed and the case is remanded for further proceedings in accordance with this opinion.