**GOODWIN'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11574.

United States Court of Appeals
Sixth Circuit.

Jan. 28, 1953.

**577**

Roger K. Powell, Columbus, Ohio, for petitioner.

S. Dee Hanson, Washington, D. C., (Charles S. Lyon, Ellis N. Slack, Lee A. Jackson, Carolyn R. Just, Washington, D. C., on the brief), for respondent.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by this appeal is the binding effect, for tax purposes, of a state court decree upholding the validity of claims against a decedent's estate. The Commissioner determined a deficiency of $41,727.22 against the estate of Charles F. Goodwin, deceased, based upon the disallowance of deductions for an aggregate of $131,652.14 of claims paid by petitioner, the administratrix of the estate, in accordance with the order of the Probate Court of Franklin County, Ohio. The Tax Court sustained the Commissioner.

The facts as found by the Tax Court are as follows: Charles F. Goodwin died intestate February 6, 1947, leaving as heirs his wife, petitioner herein, and three daughters, Frances G. Gustafson, Ruth G. Richey and Dorothy G. Freed. In March, 1947, the daughters presented the following claims to petitioner, the administratrix of the estate:

Frances G. Gustafson.......... $68,742.49
Ruth G. Richey............... 31,472.52
Dorothy G. Freed............. 31,437.13

all of which were allowed. On August 25, 1947, petitioner filed with the Probate Court of Franklin County, Ohio, of which county the deceased was a resident, a schedule of debts against the estate, including the claims of the three daughters.

At the same time petitioner filed a motion, the pertinent part of which reads as follows:

"She further says that among the claims so presented are claims in substantial amount made by the children of the decedent, which claims arise from the alleged borrowing of money by said decedent from said children during his lifetime. She says that she believes that said claims are legitimate and should be paid, but that the amount thereof is so substantial and the circumstances surrounding the inception of such indebtedness are such that she is desirous of having a determination thereof made by this Court, so as to fully determine the rights of said claimants as between the estate and them and to avoid any possible subsequent dispute as to the distributive shares of the respective claimants as heirs of the decedent, as being affected by such claims."

The matter was heard by the Probate Court on September 11, 1947. Oral testimony by petitioner and Ruth G. Richey and affidavits of Frances G. Gustafson and Dorothy G. Freed were submitted. As stated by the Tax Court the affidavit of Frances G. Gustafson recites:

" * * * that in January 1939 she became a partner of her father and mother in the operation of a business under the trade name of Sunray Stove Company; that in August 1941 she sold her partnership interest to her sisters; that while a partner she withdrew a total of $149,531.39 from the partnership, out of which she paid her income taxes and purchased bonds and other securities; that in 1944 The Tax Court of the United States determined that the partnership was invalid for income tax purposes and as a result a deficiency of $147,002.01 was determined against her father, which deficiency was thereafter paid by him 'out of funds partially his own and partially borrowed, all of the borrowings being thereafter repaid from his own funds'; that thereafter the 'Treasury Department' determined that

the partnership formed in 1941 was invalid and that profits thereof distributed to her sisters were taxable to her father; that the additional tax determined against her father was $62,829.53 for 1942 and 1943 and $49,715.35 for 1944, plus interest in the amount of $6,461.69; that in connection with the determination of a deficiency against decedent on account of the partnership with her, the Commissioner computed overassessments against her in the total amount of $68,742.49 for the years 1939, 1940 and 1941, for which she filed claims for refund; that the decedent expressed a desire to borrow the money refundable to her on account of the overassessments and in June and August 1945 requested her to ask for a prompt determination of the matter in order to make the funds available to him and thus avoid the necessity of borrowing money outside of the family; that the decedent paid a large deficiency in July 1945; that the claims for refund were allowed and payments in settlement were received by her in October 1945; that in accordance with her father's request, on October 8, 1945 her checks in the respective amounts of the checks received for refunds were given to her father who used the proceeds 'for his own personal uses'; that the decedent made arrangements with her sisters to borrow from them the amount determined to be refundable to the sisters for taxes paid for the years 1942 and 1943; and that there was an oral agreement between her and decedent that the amounts she paid to him were a loan to be used to meet personal necessities and to be repaid at his convenience."

The affidavit of Dorothy G. Freed recites, among other things:

" * * * that the deficiency of $147,002.01 determined against the decedent was paid out of his funds and money borrowed which was subsequently paid out of his funds; that a deficiency of $112,544.88 was determined against the decedent on account of inclusion in his gross income of profits distributable to her and her sister by the partnership for the period during which they were members thereof and at the same time it was determined that she was entitled to a refund of $31,437.13 and to her sister a refund in the amount of $31,472.52; that it would have been necessary for decedent to borrow funds to pay the deficiency and therefore he requested her and her sister Ruth 'to permit the amount of the refunds to be offset against the amount of his deficiency, as a loan in this amount to him'; that the decedent 'agreed and intended to repay the principal amount of said refunds to this affiant and to her sister Ruth, as soon as repayment was convenient and practicable'; and that it was not at any time after 'the offsetting of the refund * * * against his tax deficiency' possible for the decedent to pay the amount of the refunds except out of the sale of securities held by the decedent."

The order of the Probate Court is as follows:

"This cause coming on to be heard upon the application of the administratrix for a determination by the Court of the rights of certain claimants against the estate and for a hearing on the schedule of debts, which application was granted, and ex parte evidence of two of the claimants and oral testimony of another claimant and the administratrix having been submitted, and it having been further shown to the Court that all of said claimants and the administratrix are heirs at law of the decedent and that the rights of the administratrix and two of the claimants to a distributive share of the estate would be prejudiced by payment of said claims, as set forth in the schedule of debts;

"The Court finds after full consideration of such evidence and testimony and the credibility thereof, the following facts and conclusion of law:

"That the decedent borrowed from his children, Frances Goodwin Gustaf-

son, Dorothy Goodwin Freed and Ruth Goodwin Richey, and that they loaned to him certain monies in the amounts set forth in the schedule of debts heretofore filed herein, such loans being made without interest;

"That said claimants were not volunteers, but at all times expected repayment of their loans and that decedent at all times intended to repay said loans, as soon as such repayment should be convenient and practicable;

"And that all the other claims set forth in the schedule of debts are proper obligations of the estate."

No review of this order was sought and in accordance therewith petitioner paid the claims, totaling $131,652.14. This amount was thereafter deducted by the petitioner in computing the net estate of the decedent for estate tax purposes. The respondent determined that the claims did not constitute lawful deductions within the purview of Section 812(b)(3) [1] of the Internal Revenue Code, 26 U.S.C.A., and computed the deficiency here involved.

Petitioner contends that the decision of the Tax Court sustaining the Commissioner's determination overlooks the applicable Treasury Regulations and controlling decisions as to the binding effect of the judgment of the state court. While the regulations were specifically urged before the Tax Court they are not mentioned in its decision.

The pertinent part of the Treasury Regulations is as follows:

Regulation 105, § 81.29. "* * * If a claim against the estate, an unpaid mortgage, or an indebtedness is founded upon a promise or agreement, the deduction therefor is limited to the extent that the liability was contracted bona fide and for an adequate and full consideration in money or money's worth, * * *.

Regulation 105, § 81.30. "Effect of court decree. The decision of a local court as to the amount of a claim or administration expense will ordinarily be accepted if the court passes upon the facts upon which deductibility depends. If the court does not pass upon such facts, its decree will, of course, not be followed. For example, if the question before the court is whether a claim should be allowed, the decree allowing it will ordinarily be accepted as establishing the validity and amount of the claim. The decree will not necessarily be accepted even though it purports to decide the facts upon which deductibility depends. It must appear that the court actually passed upon the merits of the case. This will be presumed in all cases of an active and genuine contest. If the result reached appears to be unreasonable, this is some evidence that there was not such a contest, but it may be rebutted by proof to the contrary. If the decree was rendered by consent, it will be accepted, provided the consent was a bona fide recognition of the validity of the claim —not a mere cloak for a gift—and was accepted by the court as satisfactory evidence upon the merits. It will be presumed that the consent was of this

---

1. "For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \*

"(b) Expenses, losses, indebtedness, and taxes. Such amounts—

\* \* \* \* \*

"(3) for claims against the estate,

\* \* \* \* \*

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth;

\* \* \*."

character, and was so accepted, if given by all parties having an interest adverse to the claimant. * * *"

Petitioner urges that in the proceedings before the Probate Court there was an active and genuine contest or, in the alternative, a consent decree not shown to be collusive or fraudulent and therefore binding here under the Regulations. Clearly the Probate Court proceeding was not an active and genuine contest, for every party to the proceeding agreed that the claims were valid. However, the petitioner was a party having an interest adverse to the interests of the daughters. As widow of the decedent, petitioner was entitled to one-third of the net estate administered in the Probate Court after payment of claims against the estate. Section 10503–4, General Code of Ohio. The three daughters were entitled to share equally in the remainder of the estate. It is undisputed that the payment of the claims of the daughters reduced the distributive share of the widow over $30,000. The amounts paid the daughters upon their respective claims exceeded the distributive share that they would otherwise have received by varying amounts, by far the largest excess over her distributive share having been received by Frances G. Gustafson. The other two daughters therefore had an interest adverse to the allowance of the claim of Frances G. Gustafson. As the estate was solvent, the widow and daughters were the only interested parties in the proceeding with reference to the allowance of claims.

█ The decree of the Probate Court was rendered after a hearing of which all parties had notice, and in which oral testimony was taken. While consent to the entry of the decree was given, it was given "by all parties having an interest adverse to the claimant." Regulations 105, § 81.30. Under the Regulations it is therefore presumed that such consent was a bona fide recognition of the validity of the claim, not a mere cloak for the gift, and was accepted by the court as satisfactory evidence upon the merits. This presumption was not rebutted. Respondent introduced no testimony. If the Regulations are

valid the decree should have been accepted as establishing the validity and amount of the claims.

█ The Regulations deal with the effect of local court decrees as to the amount of claims or administrative expenses. We bear in mind the principle that the state law may control in taxing matters only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119. Section 812(b)(3) provides that the value of a decedent's net estate shall be determined by deducting from the value of the gross estate such claims "as are allowed by the laws of the jurisdiction * * * under which the estate is being administered * * *." This statute, therefore, as to the allowance of claims against an estate, expressly makes its own operation dependent upon state law. Moreover, the Regulations follow the authority of the statute in declaring that payment of claims out of the estate must be "authorized by the laws of the jurisdiction under which the estate is being administered." The Regulations also adopt the statutory provision requiring that claims against the estate be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth.

As to other provisions the Regulations follow and amplify in practical detail the long existing case law upon this question. In Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 312, 78 L.Ed. 634, it was held that the decree of a state court establishing the rights of beneficiaries under a trust must be considered in applying the Revenue Act of 1921. The court said, "The rights of the beneficiaries are property rights and the court has adjudicated them." This was followed by Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, opinion by Chief Justice Hughes. In this case a decision by the intermediate Appellate Court of Illinois declaring the right of the beneficiary of a trust to assign parts of his interest was held conclusive in the application of the Revenue Act. While the Supreme Court recognized the rule of the

family partnership cases as stated in Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665, it held that this decision did not apply. It follows that Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, relied on by respondent, is not controlling here. A holding similar to that of Blair v. Commissioner, supra, was made in Sharp v. Commissioner, 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087, which reversed a decision of the Tax Court upon the authority of the Freuler and Blair cases.

 The Government urges that the Regulations have no binding effect. Treasury Regulations are ordinarily valid unless unreasonable or inconsistent with the statute. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; Thacher's Distilled Spirits, 103 U.S. 679, 26 L.Ed. 535; Morrissey v. Commissioner, 296 U.S. 344, 354, 56 S.Ct. 289, 80 L.Ed. 263; Commissioner v. Wheeler, 324 U.S. 542, 546, 65 S.Ct. 799, 89 L.Ed. 1166; Cf. Alison v. United States, 344 U.S. 167, 73 S.Ct. 191. If not unreasonable or plainly inconsistent with the revenue statutes, they should not be overruled except for weighty reasons. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831. As pointed out above, these Regulations closely follow and in no way extend the statute. They also follow the Freuler, Blair and Sharp decisions. It is not claimed that they are unreasonable. We conclude that they are valid.

 Respondent also contends in effect that the Regulations do not apply because the order of the Probate Court was not a decision on the merits. Here the Probate Court in a formal motion was requested to rule upon the validity of the claims involved. Notice was duly given, a public hearing was held, and oral testimony was taken. The Probate Court had exclusive jurisdiction of the subject matter. Section 10501–53, Ohio General Code. Puder v. Agler, D.C., 242 F. 95. It was empowered to determine all questions of fact underlying its decisions. Section 10501–32, Ohio General Code. While an appeal from the order of the Probate Court could

have been taken to the Court of Common Pleas, no appeal proceedings were instituted. The Probate Court's decision by its allowance of the claims substantially and adversely affected the property rights of three beneficiaries of the estate. This was undeniably a decision on the merits and the Regulations were squarely applicable.

In support of our conclusion that the judgment of the Probate Court controls are important decisions from this and other circuit courts. In Helvering v. Rhodes' Estate, 8 Cir., 117 F.2d 509, the court followed the finding of a state court that a decedent owned certain stock at the time of her death. The Eighth Circuit Court of Appeals pointed out that the state court had jurisdiction of the parties and the subject matter and that its determination was conclusive. In Nashville Trust Co. v. Commissioner, 6 Cir., 136 F.2d 148 the court held that the decision of a Tennessee state court that legacies were based on a valid consideration due to services performed by the legatees was binding in a subsequent tax case and that the United States Tax Court was not authorized to hold that the legacies were in part gifts subject to the federal estate tax. This case was heard in the chancery court upon depositions which were not controverted and no appeal was taken. In Commissioner v. Blair, 83 F.2d 655, the Seventh Circuit held that a state court decree fixing the property rights of a beneficiary of an estate on a specific matter is binding upon the federal court. The court pointed out that there were certain features of the case which made it like a consent decree, but since the circumstances were equally consistent with good faith the court held that the decree of the state court was binding. While this holding was reversed in Blair v. Commissioner, supra, on another point it was affirmed as to the binding effect of the state court decree and as to the conclusion that no collusion was shown.

Cases cited by respondent have little bearing. In First Mechanics Nat. Bank v. Commissioner, 3 Cir., 117 F.2d 127, 132 A.L.R. 1459, while an executor's accounting was approved by the Probate Court,

including a claim to whose allowance all beneficiaries consented, the validity of the particular claim in controversy was never before the court except in a pro forma matter. In Pease v. Commissioner, 6 Cir., 83 F.2d 122 a judgment of the Ohio Supreme Court upon a similar question, but between parties different from those involved in the cited case, was held not binding in a Tax Court controversy. These cases manifestly do not apply here where the precise question of the validity of the claims was heard and where the consent of all beneficiaries adversely affected was given and accepted by the court as satisfactory evidence upon the merits.

We think it was error to fail to apply the Treasury Regulations.

 The Tax Court stressed the fact that the transcript of the Probate Court proceedings was "partial." It is conceded that the transcript did not cover every phase of the Probate Court proceedings with reference to this estate. It is asserted, and not denied, that the parts of the record pertinent to this proceeding were introduced before the Tax Court and the character of the transcript supports this assertion. The papers presented showed the petitioner's motion for determination of this question by the Probate Court, the jurisdiction of the court, the facts on which the judgment was based, and the judgment itself. The fact that the oral testimony of the mother and one daughter was not transcribed was commented on by the Tax Court. The failure to transcribe testimony does not destroy the validity and effect of a judgment based upon such testimony. It appears that the oral testimony in question was presented by witnesses with interests adverse to the allowance of the claims, who had already given written consent to their allowance. The record shows by the undisputed facts the giving of the money to the father, his promise to repay the daughters, and the consent by all of the parties adversely affected.

The Tax Court also questioned the adequacy of the consideration. Since it is undisputed that the father received the sums in question this constituted a money consideration. The statute does not require a formal agreement for the allowance of claims but requires that "when founded upon a promise or agreement, [they] be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. * * *" The Probate Court is a court of record and its records import absolute verity. Wilberding v. Miller, 90 Ohio St. 28, 46, 106 N.E. 665, L.R.A.1916A, 722. The Tax Court has no authority to set aside the judicial finding as to adequacy of consideration and to find that the money loaned the father did not belong to the daughters. In Guaranty Trust Co. v. Commissioner, 2 Cir., 98 F.2d 62, relied on by respondent as supporting the existence of such authority, no question of the effect of a valid state court decision was involved. Undeniably the sums in question here were in possession of each of the daughters, having been refunded to them by the taxing authorities, and the promise of the father to repay the loans was supported by adequate consideration.

The decision of the Tax Court is reversed and the case is remanded for further proceedings in accordance with this opinion.