Harry S. STARK and National Bank of Detroit, as Co-Executors of the Estate of Louise Tuller Miller, deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 22733.

United States District Court
E. D. Michigan, S. D.

Jan. 16, 1964.

Kramer, Morris, Stark, Rowland & Regan, Detroit, Mich., for plaintiffs.

Lawrence Gubow, U. S. Atty., and Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich. Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Melwyn I. Mark, Dept. of Justice, Washington, D. C., for defendant.

KAESS, District Judge.

This is an action to obtain a refund of federal income taxes. It is stipulated by the parties that the only issue before the court is whether Finley P. Miller and Louise Tuller Miller were husband and wife during the calendar years 1957, 1958, and 1959. If they were husband and wife, the advantages of filing joint returns would be available. Finley P. Miller died on May 28, 1960, and Louise Tuller Miller died on September 10, 1960. In order to establish the existence of the marriage, plaintiffs, the co-executors of the estate of Louise Tuller Miller, have offered the record of proceedings in the Wayne County Probate Court in the matter of the estate of Finley P. Miller, including the order determining heirs entered on March 1, 1962.

First of all, the court must rule upon the record's admissibility. There are numerous tax cases in which a de-termination of a state court has been offered, and the district court asked to give it conclusive effect. In such cases, the record has been received so that the effect to be given the determinations contained therein may be considered. See Cadden v. Welch, 6 Cir., 298 F.2d 343; Channing v. Hassett, 1 Cir., 200 F.2d 514. Indeed, it is urged that the effect to be given a determination must depend upon its nature. Clearly the best evidence of the nature of a judicial determination is the record. The record may be admitted to prove the nature of the Probate Court's determination.

The Probate Court held that Louise Tuller Miller was the surviving widow of Finley P. Miller, and therefore his sole heir. Specifically, it was found that their marriage had existed prior to January 1, 1957. This finding was essential since the validity of marriages contracted on January 1, 1957, and thereafter, is made dependent by Michigan law upon the performance of a marriage ceremony, and no evidence of the performance of a marriage ceremony was before the Probate Court. See M.S.A. § 25.2, Comp. Laws 1948, § 551.2.

To supplement the record, plaintiffs have offered the testimony of Harry S. Stark, Jr. Mr. Stark first became acquainted with Louise Tuller Miller in 1946. He handled her tax matters beginning in 1948 and her legal matters generally beginning in 1954 or 1955. He testified that, so far as he knew, all her business papers and documents of title were in the name Louise Tuller, and he assumed that she was unmarried. However, she never discussed her personal life, and remained a mystery to him. In 1960, he first became acquainted with Mr. Miller, who was suffering from a stroke and unable to speak. He assumed that Mr. Miller was a friend. Apparently, Mr. Miller was not introduced to him as Louise Tuller Miller's husband. The testimony is that Louise Tuller Miller told him of her marriage to Mr. Miller shortly after Mr. Miller's death, and requested that a petition for the administration of Mr. Miller's estate, a petition

for the determination of heirs, and a claim for a refund of federal income taxes be prepared, in which she was named as Mr. Miller's widow. There were 24 or 26 thousand dollars in Mr. Miller's estate, despite the fact that Louise Tuller Miller had borne the burden of Mr. Miller's medical and other expenses during the last years of his life, to the amount of some 72 or 74 thousand dollars. Louise Tuller Miller died before the proceedings she initiated could be carried to a conclusion.

The proceedings were carried forward by National Bank of Detroit, as the administrator of Mr. Miller's estate, and National Bank of Detroit and Mr. Stark, as the co-executors of the estate of Louise Tuller Miller, both estates being represented by Mr. Stark's law firm. On October 17, 1960, the Attorney General of the State of Michigan filed an answer to the petition for the determination of heirs. He denied that Louise Tuller Miller had been married to Finley P. Miller, and presented a claim that Mr. Miller's estate had escheated. Through diligent research, the existence of 19 persons distantly related to Mr. Miller was uncovered, and on January 19, 1961, the Attorney General withdrew his claim of escheat. On January 30, 1961, plaintiffs were permitted to file a tardy claim for $72,747.57. Their theory was that, by virtue of a promise implied in law or fact, the amount paid for Mr. Miller's medical and other expenses was to have been repaid—that is, that it did not represent a gift. A guardian ad litem was appointed to review plaintiffs' claim. No objection was raised and, on April 25, 1961, the claim was allowed on the recommendation of the guardian ad litem. The findings of the guardian ad litem are interesting in light of the fact that plaintiffs had asserted that Louise Tuller Miller had been married to Finley P. Miller:

> "It seems that Mr. Finley P. Miller was a very close friend of Louise Tuller for many years. Mr. Finley P. Miller died in the year, 1960, and the only heirs that were discovered were distant relatives living outside the State of Michigan and these said relatives were not even acquainted with the deceased. On the other hand the evidence in this case clearly shows that Louise Tuller was a close friend of Finley P. Miller for many years and that she had given him large sums of money over the years from 1957 to 1960."

Through allowance of the claim the estate was exhausted, except for $100.00, which was retained to provide for any further costs of administration. On January 9, 1962, and January 30, 1962, the Probate Court received testimony on the petition to determine heirs. This time no guardian ad litem was appointed, and there was no one to oppose plaintiffs' presentation.

 Plaintiffs argue that a determination made by a state court in a matter involving state law should be given conclusive effect without regard to the nature of the determination. It is sufficient in their view that the taxpayer has been a party to the case. In the court's opinion, plaintiffs' argument fails to give adequate consideration to the reason for giving conclusive effect to state court determinations, and goes beyond the rule established in the cases of Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 and Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. In those cases, the test of liability was the existence of the right to receive income. In the Freuler case, the state court had held that the taxpayer did not have the right to distributions already received from a trust and ordered him to make restitution. The Supreme Court held that the order of the state court was an order determining the right to receive income, and as such conclusive of liability. In the Blair case, the state court had held that the taxpayer had effectively transferred the right to receive income from a trust. The Supreme Court again held that the decision of the state court was conclusive. Where there has been a final judgment determining property rights, not

subject to collateral attack, the rights of the parties can only be what the state court has held them to be. See Restatement, Judgments § 110. Yet a determination of some other question in a proceeding in which the United States was not a party or privy to a party would not, under the principles of the law of judgments, be conclusive upon the United States. Even in a proceeding in rem, the judgment is not conclusive as to a fact upon which it is based except between those persons who have actually litigated the question of the existence of the fact. See Restatement, Judgments § 73. This distinction between the determination of property rights and the determination of other questions has been recognized by Judge Maris in a careful opinion. Gallagher v. Smith, 3 Cir., 223 F.2d 218, 222–223.

Plaintiffs argue for a broader rule and rely upon several decisions in the Sixth Circuit in which a state court determination essential to the validity of a claim against an estate has been held conclusive in subsequent proceedings to determine whether the claim was deductible for federal estate tax purposes. Cadden v. Welch, 6 Cir., 298 F.2d 343; Goodwin's Estate v. Commissioner, 6 Cir., 201 F.2d 576; Nashville Trust Co. v. Commissioner, 6 Cir., 136 F.2d 148. These decisions form an apparent extension, although in each case the Court of Appeals carefully reviewed the determination and was satisfied of its correctness. The rule has been extended in the Third Circuit, so that a determination of the nature of a right in an estate is made conclusive. See Estate of Darlington v. Commissioner, 3 Cir., 302 F.2d 693; Beecher v. United States, 3 Cir., 280 F.2d 202. Still, in these cases, the determinations have been closely related to property rights in issue in both courts. Plaintiffs' rights in the estate of Finley P. Miller are not in issue here.

█ If the Government is to have its day in court, it must be afforded the opportunity to cross-examine plaintiffs' witnesses. This is not a case in which the facts are clear. Louise Tuller Miller remained a mystery to Mr. Stark. The witnesses in the Probate Court were not her intimates, and their knowledge of her life was fragmentary. In order for the latent inaccuracies and uncertainties to be exposed, effective cross-examination would be essential. However, plaintiffs chose not to call the witnesses, and requested that the transcript of testimony in the Probate Court be considered instead. Their request must be denied, since any consideration of the testimony in the Probate Court on the issue of the existence of the marriage would deprive the Government of the opportunity to cross-examine.

Furthermore, it appears that plaintiffs, as the co-executors of the estate of Louise Tuller Miller, and National Bank of Detroit, as the administrator of the estate of Finley P. Miller, joined in the submission of the issue of Louise Tuller Miller's marital status and sought a determination that would adversely affect the Government's right to the taxes in issue. Hence, even though the doctrine of the Freuler case were applied, the determination would not be entitled to conclusive effect. See Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634; Restatement, Judgments § 91, Comment *d*. When the Attorney General contested plaintiffs' averments and claimed an escheat, distant relatives were found. The estate then was substantially exhausted through the allowance of plaintiffs' claim, and the only purpose served by the subsequent proceedings was to obtain a favorable determination of Louise Tuller Miller's marital status for use here.

This action has been tried by the court without a jury. The Government's motion for a directed verdict made at the close of plaintiffs' case will be treated as a motion for dismissal on the ground that upon the facts and the law plaintiffs have shown no right to relief. In accordance with the opinion of the court, an order for dismissal will be entered and judgment rendered against plaintiffs.