**Harry S. STARK and National Bank of Detroit, Co-Executors of the Estate of Louise Tuller Miller, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 15940.**

United States Court of Appeals Sixth Circuit.

Sept. 24, 1965.

Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Plaintiff-appellants are co-executors of the Estate of Louise Tuller Miller. Involved on this appeal is the District Court's dismissal of their suit for refund of federal income taxes assessed against Louise Tuller as a single person for the calendar years of 1957, 1958 and 1959. Determinative of the appellants' lawsuit is the question whether a Probate Court order finding that Finley P. Miller and Louise Tuller had become husband and wife in a common-law marriage prior to 1957 was, by itself, conclusive of such issue in this suit for refund. The return for the year 1957 had been made out in 1958 and the tax paid by Louise Tuller as a single person. Finley P. Miller died May 28, 1960. After his death, Louise Tuller filed a petition for the probate of his estate, therein describing herself as Louise Tuller Miller, his widow. Upon this petition she was represented by appellant Harry S. Stark who had been Louise Tuller's attorney for many years, knew her as a single woman and had so handled her affairs. The National Bank of Detroit was appointed Special Administrator of Finley P. Miller on June 9, 1960. Thereafter, joint income tax returns for the years 1958 and 1959 were prepared on behalf of Louise Tuller Miller and National Bank of Detroit, as widow and administrator of the deceased Finley P. Miller. An amended return of like import was also filed for the year 1957. The original return for 1957 disclosed a tax liability of Louise Tuller of $10,677.-74. By claiming the advantages of a joint return for the years 1957, 1958 and 1959, deductions of some $45,000 of medical expense for the care of Finley P. Miller during several years of his last illness, and by taking credits for overpayment of taxes in previous years by such allegedly married couple, all income tax liability for the years 1958 and 1959 was claimed to be satisfied. Upon review of these returns, the Commissioner

Willard M. Reagan, Detroit, Mich., Kramer, Morris, Stark, Rowland & Regan, Detroit, Mich., on brief, for appellants.

Fred R. Becker, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Rufus E. Stetson, Jr., Attys., Dept. of Justice, Washington, D. C., on brief; Lawrence Gubow, U. S. Atty., Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., of counsel, for appellee.

assessed deficiencies in the amount of $22,238.11 against the Estate of Louise Tuller Miller, who died in September, 1960.

■ The assessment was paid by the co-executors of Louise Tuller Miller and this suit for refund followed. The complaint alleged that Louise Tuller Miller and Finley P. Miller were husband and wife in the years involved. The defendant denied such allegation and upon the issue thus drawn the case came on for trial before the District Judge without a jury. Plaintiffs produced no evidence to support the claim of marriage other than an order of the Probate Court of Wayne County, Michigan, determining that the deceased Louise Tuller had been the widow and sole heir at law of Finley P. Miller. They also offered a transcript of the evidence taken in the Probate Court hearing. This transcript was not received as substantive proof but merely as explanatory of what had occurred at the Probate Court hearing. The effect of other testimony given by appellant Harry S. Stark is set out in the District Court's opinion. Whatever relevancy it had as background, it was clearly hearsay upon the issue of marriage and was correctly treated as such by the District Judge. At the conclusion of plaintiffs' proof, the District Judge dismissed the complaint. His opinion on such dismissal is reported as Stark v. United States, 228 F.Supp. 203 (E.D.Mich. 1964). We affirm that decision.

■ We believe that the District Judge's opinion adequately discusses the facts and law involved, and we supplement it only with the following recital of some additional facts and the procedure followed in the Probate Court. On April 11, 1960, about a month prior to the death of Finley P. Miller, appellant Stark drafted a will for Louise Tuller in which she was identified as a single woman and Finley P. Miller was described as her friend. In none of the proceedings in the Probate Court was the United States or its Commissioner of Internal Revenue sought to be made a party or included in those who were served with notice of the hearings thereon. These proceedings included the petitions for appointment of a general and a special administrator of the Finley P. Miller Estate; the petition for the allowance of appellants' claim for some $70,-000 for medical bills of Finley P. Miller paid by Louise, the allowance of which wiped out the $23,000 residue of Finley's estate; and the petition to determine heirs which resulted in the order now relied upon as a finding, binding upon the District Court, adjudicating "as a fact" that Louise and Finley had been husband and wife. The probate record also indicates that notice of the taking of the depositions of various witnesses for use in the Probate Court hearing on the petition to determine heirs was not served on the United States. The transcript of the Probate Court hearing discloses that at one session a representative of the Internal Revenue Department was present and that the Probate Judge advised that he was welcome to take part in the pending hearing. We do not know whether such representative was a government lawyer or whether he had anything more than the status of an interested spectator. He did not appear at a continued hearing of the matter. We do not consider that the presence of the Internal Revenue representative at one of the hearings made the United States a party to such proceeding.[1]

1. While not of controlling importance, it may be interesting to summarize some of the evidence offered in the Probate Court to support its finding of marriage. It presents a bizarre story. Louise and Finley Miller both led highly secretive lives, and Finley at least was known as a "character" by many in downtown Detroit. No claim was made of a valid ceremonial marriage between them. Each lived alone in a different hotel while in Detroit, and Louise held all her property and conducted all her affairs under her maiden name. They were known as man and wife, however, by their chauffeur, their doctor, personnel at Finley's hotel, and Finley's tailor and automobile dealer. It was shown that they visited each other daily and annually made prolonged trips to Florida where they did occupy the same

Plaintiff-Appellants contend that the judgment of the Probate Court thus arrived at concludes further dispute of Louise Miller's marital status in the present suit. Reliance is placed on Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 (1934); Cadden v. Welch, 298 F.2d 343 (CA 6, 1962); Goodwin's Estate v. Commissioner of Internal Revenue, 201 F.2d 576 (CA 6, 1953); and Nashville Trust Co. v. Commissioner of Internal Revenue, 136 F.2d 148 (CA 6, 1943). The District Judge's detailed analysis of those cases discloses that the state court orders there found to be binding on the United States were all entered in proceedings which called for state court determinations of state law essential to fixing or characterizing property rights of the persons in interest. The complaint here asserts that the Probate Judge "found *as a fact*" the needed marriage relationship and the Probate Judge was specific in saying that "The Court finds *as a fact*" that Louise and Finley were married in at least a common-law relationship prior to January 1, 1957, the date after which no marriage could come into existence under Michigan law except one solemnized by ceremony and pursuant to license.

We do not think that the interesting procedures employed first to obtain for the Estate of Louise the entire residue of the Estate of Finley, and then to obtain an order declaring Louise his widow, were comparable to the procedures involved in the above-mentioned authorities relied on by appellants. We do not believe that the government is bound in this proceeding by the resolution of *fact* questions in a state court proceeding to which it was not a party.

We affirm the judgment of the District Judge and approve his opinion.

hotel suite. Louise and Finley had each listed the other as spouse and next-of-kin

on hospital records. Finley was approximately 95 years old at his death.