OLD KENT BANK AND TRUST COM-
PANY, a Michigan banking corporation,
Mildred M. Campbell and Charles R.
Sligh, Jr., Co-Executors of the Estate of
Kenneth H. Campbell, Deceased, Plain-
tiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 4286.

United States District Court
W. D. Michigan, S. D.

Aug. 27, 1964.

Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiffs, Peter Van-Domelen, Grand Rapids, Mich., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Robert F. Sama, Dept. of Justice, Washington, D. C., George E. Hill, U. S. Dist. Atty., Grand Rapids, Mich., for defendant.

FOX, District Judge.

By dint of stipulation between the parties, the sole issue to be determined by the Court in this case is the amount to be allowed as a marital deduction under Section 812(e) of the Internal Revenue Code of 1939, as amended.

More specifically, the parties have stipulated that in the event the Court should find the amount to be allowed as a marital deduction is $173,771.81, or some lesser amount, a judgment would be entered in favor of defendant, and this cause would be dismissed forthwith with prejudice; but if, on the other hand, the Court should find that the amount to be allowed as a marital deduction is in excess of $173,771.81, the parties would endeavor to agree upon the amount of the judgment to be entered in favor of plaintiff; provided, however, that there should be taken into account in computing the judgment such further deduction as allowed by law for reasonable attorney fees and expenses incurred by plaintiffs in the prosecution of this action; and provided further, that if they should be unable so to agree, the amount of the judgment would be submitted to the Court.

The dispute over the amount to be allowed as a marital deduction arises out of these facts:

Kenneth H. Campbell, a resident of Ottawa County, Michigan, died testate on May 18, 1954. The plaintiff Old Kent Bank and Trust Company, of Grand Rapids, Kent County, Michigan, the successor by consolidation and merger to The Michigan Trust Company, and the plaintiffs Mildred M. Campbell and Charles R. Sligh, Jr., citizens of Ottawa County, Michigan, were duly appointed as Co-Executors of Kenneth H. Campbell's estate by the Probate Court for Ottawa County, Michigan.

The will and codicils, in pertinent part, are set out in the footnote below.[1]

---

1. Will of Kenneth H. Campbell:
   "I.
   I direct the payment of my just debts, funeral charges and expenses of administration from my estate.
   II.
   I direct that all Federal and State estate, inheritance, succession and transfer taxes, and any other taxes, charges or assessments which may be levied by any State of the United States, or by the United States of America, or by any other lawful taxing authority against my estate, or against any specific bequests or devises which I may now or hereafter make, or against any legatees or devisees thereof, or against the proceeds of any insurance taxed as part of my estate, or against any property received or receivable by any person, or against any such recipient, regardless of whether such insurance or property shall constitute part of my estate, shall be paid out of the principal of the residue of my estate, so that such taxes, charges, or assessments shall not be chargeable against any devises, bequests or legacies, or against the amounts received or receivable by any person from me or my estate, by life insurance or otherwise.
   * * * * *
   V.
   If my wife, MILDRED M. CAMPBELL, shall survive me, I give, devise

On June 8, 1943, Kenneth H. Campbell entered into a Trust Agreement with The Superior National Bank and Trust Company, of Hancock, Michigan, as Trus-

and bequeath to her outright so much of the rest, residue and remainder of my estate, whether real, personal or mixed, of which I shall die seized or possessed, or to which I may be entitled in any manner at my death, or over which I may have any power of appointment, and wherever the same may be situated, as will equal forty per cent (40%) thereof before deduction of taxes, claims and administration expenses.

### VI.

I give, devise and bequeath all the rest, residue and remainder of my estate, including any property over which I may have any power of appointment, and the net property hereinbefore given in Paragraph V hereof, if my wife shall fail to survive me, to my Trustees hereinafter named, IN TRUST, however, for the following uses and purposes:

(a) To hold, manage, invest and reinvest the principal, to collect the income thereof, and to pay over the net income to my wife, MILDRED M. CAMPBELL, for her life, in monthly, quarterly or annual installments as she may direct.

(b) My Trustees, other than my wife, shall have the power in their sole discretion, to use so much of the principal of the Trust as they shall deem advisable or expedient to maintain my wife in her usual manner and style of living, without requiring her to use any property, funds or estate of her own before invading the principal, it being my intention in creating this Trust to provide for her care and welfare rather than to preserve the principal intact.

(c) Upon the death of my said wife, or if she predeceases me, upon my death, my Trustees shall pay and distribute the principal and the accrued income, if any, in equal shares, to my brothers, MALCOLM G. CAMPBELL, of Indianapolis, Indiana, and HOLLY E. CAMPBELL, of Dixon, Illinois, and if either of them are not then living, his share shall be paid and disturbed to his issue, per stirpes and not per capita, except that MARY LOU CAMPBELL, daughter of my brother, HOLLY E. CAMPBELL, shall take nothing under this paragraph, it being my intention that she and her issue receive no part of my estate. If my brother, HOLLY E. CAMPBELL, is not living at the time this paragraph takes effect, and leaves no then living child or children other than said MARY LOU CAMPBELL, then his share under this paragraph shall be paid and distributed to my brother, MALCOLM G. CAMPBELL, or if he is not then living, to his issue, per stirpes and not per capita."

Codicil to Will of Kenneth H. Campbell:

"I hereby substitute the following in place of subparagraph (c) of Paragraph VI of said Will:

(c) Upon the death of my said wife, or if she predeceases me, upon my death, my Trustees shall divide the principal and accrued income, if any, into two equal parts, and shall pay over and distribute one of such parts to my brother, MALCOLM G. CAMPBELL, of Indianapolis, Indiana, if he is then living, and if he is not then living, such part shall be paid over and distributed to his issue, per stirpes and not per capita.

My Trustees shall continue to hold the remaining part and shall pay over the income therefrom in monthly, quarterly or annual installments as the beneficiary may direct to my brother, HOLLY E. CAMPBELL, of Dixon, Illinois, for his life. Upon the death of the survivor of my brother HOLLY, my wife and myself, I direct that such share shall be designated as the KENNETH H. CAMPBELL FUND, the income from which fund is to be used by my Trustees exclusively for the advancement of psychoneurological research on organic and functional diseases of the human body. If such purpose shall not qualify under the United States Internal Revenue Laws for charitable exemptions, I direct my Trustees to designate such suitable organization or organizations formed exclusively for charitable purposes as may effectuate my intent as the recipient of such income."

Second Codicil to Will of Kenneth H. Campbell:

### "I.

I hereby substitute the following in place of subparagraph (c) of Paragraph VI of said Will, as amended by the codicil thereto:

(c) Upon the death of my said wife, or if she predeceases me, upon my death, my Trustees shall divide the principal and accrued income, if any into two equal parts, and shall pay over and distribute one of such parts to my brother, MALCOLM G. CAMPBELL, of Indianapolis, Indiana, if he is then living, and if he is not then liv-

tee which agreement was subsequently amended on May 15, 1948.

On March 4, 1955, The Michigan Trust Company replaced the Superior National Bank and Trust Company, of Hancock, Michigan, as Trustee of the Trust. The Trust, in pertinent parts, is set out in the footnote below.[2]

At the time of his death, the testator left surviving him his wife, Mildred M. Campbell, a brother, Malcolm G. Campbell, a brother, Holly E. Campbell, and five nieces and nephews; namely, Nancy Y. Campbell, Carol J. Campbell, Gordon H. Campbell and Sally Jo Campbell, all being children of Malcolm G. Campbell, and Mary Lou DuSold, being the child of Holly E. Campbell.

Plaintiffs filed a timely federal estate tax return for the estate of Kenneth H. Campbell, with the District Director of Internal Revenue at Grand Rapids, Mich-

igan, on August 16, 1955. The federal estate tax of $77,821.77 shown to be due, was paid on August 16, 1955. Included as a part of the gross estate shown on the federal estate tax return were the assets of the *inter vivos* trust, which at the death of Kenneth H. Campbell amounted to $341,176.60. A federal estate tax deficiency in the sum of $38,527.36, plus interest of $6,952.92, for a total of $45,481.28, was paid to the District Director of Internal Revenue on September 23, 1958.

The plaintiffs filed a claim for a refund on December 23, 1958, seeking a refund of $38,358.40, or such greater amount, plus interest, as provided by law. By letter of March 17, 1960, the defendant proposed to deny the claim for the refund and by letter of April 28, 1960, the defendant denied that same claim.

On August 28, 1956, plaintiffs, as Co-Executors of the estate of Kenneth H.

ing, such part shall be paid over and distributed to his issue, per stirpes and not per capita.

My Trustees shall continue to hold the remaining part and shall pay over the income therefrom in monthly, quarterly or annual installments as the beneficiary may direct to my brother, HOLLY E. CAMPBELL, of Dixon, Illinois, for his life. Upon the death of the survivor of my brother Holly, my wife, and myself, I direct that such share be paid over to THE KENNETH H. CAMPBELL FOUNDATION FOR NEUROLOGICAL RESEARCH, a Michigan corporation."

2. "(2) The said TRUSTEE shall hold all of said securities and all additions thereto and shall collect the income therefrom for the benefit of the SETTLOR, but without power during the lifetime of the SETTLOR to sell any of the said securities or make investments except on approval of the SETTLOR if and when he can be reached within a reasonable time, otherwise with the consent and approval of Gordon R. Campbell, and except that surplus funds above the sum of Five Thousand Dollars ($5,000.00) may be invested in Government Bonds.

\* \* \* \* \*

(4) It is expressly directed that the securities belonging to this TRUST shall be kept separate and distinct from securities belonging to other Trusts and

from the securities belonging to said TRUSTEE in its own right.

\* \* \* \* \*

(6) In case of the death of the SETTLOR the TRUSTEE shall pay (out of the income of the TRUST, if sufficient, otherwise out of the body of the TRUST) to my wife, Mildred M. Campbell the sum of Five Hundred Dollars as (sic) month as along as she lives.

(7) Upon the death of my wife, or should she not survive me, the residue of said TRUST shall be divided into as many parts as I have nephews and nieces then surviving and held in TRUST for each until he or she shall have reached or is past the twenty-fifth anniversary of birth when it shall be delivered to him or her in good securities, provided, however, if it is shown to the TRUSTEE that the person so entitled to receive such portion and for whom it is held in Trust is liable to suffer for the necessities of life or lack of education, the TRUSTEE may pay to him or her in regular monthly payments out of his portion of the TRUST as may be necessary to provide for such necessities and education.

\* \* \* \* \*

(10) This agreement may be altered at any time by mutual agreement during the life time of the SETTLOR and may be terminated at any time after one year by either party giving sixty days notice in writing of such intention."

Campbell, filed a petition in the Ottawa County Probate Court for the construction of the decedent's will. Waivers of notice and consents to the petition were filed by Malcolm G. Campbell, Holly E. Campbell, and The Kenneth H. Campbell Foundation for Neurological Research. The waiver of notice and consent filed on behalf of The Kenneth H. Campbell Foundation for Neurological Research was executed by Siegel W. Judd, who was a member of the law firm which represented the estate of Kenneth H. Campbell. On October 17, 1956, the Ottawa County Probate Court entered an order construing the will of the decedent.

The question placed before that court for construction was whether or not the word "estate" as used in Paragraph V of said will was intended to include assets held by the Superior National Bank and Trust Company under a Trust Agreement with said deceased. The court realized that if the word "estate" as used in said Paragraph V was construed to include said trust assets, nothing would pass under Paragraph VI of said will to the residuary legatees, Malcolm G. Campbell, Holly E. Campbell, and The Kenneth H. Campbell Foundation for Neurological Research. Upon this question, the court determined that the correct construction of said will, in light of the circumstances set forth in the petition, required "that the word 'estate' as used in Paragraph V of said will include said trust assets."

The court's order was never appealed, and the time for any appeal therefrom has expired.

On August 17, 1955, The Michigan Trust Company, as successor Trustee of the trust described above, paid over to the estate of Kenneth H. Campbell the sum of $72,610.44. The first annual account of The Michigan Trust Company states that this sum represented the trust's "share of the federal estate tax assessed against the above estate on account of inclusion of the assets of this trust in the federal estate tax return." On or about August 27, 1956, The Michigan Trust Company as successor trustee of the Trust, filed with the Circuit Court

of Kent County, Michigan, its first annual account for the period March 4, 1955 to March 4, 1956. Included in the account was the payment of the sum of $72,610.44 to the estate of Kenneth H. Campbell. Waivers of notice and consents to the allowance of the account were filed by Malcolm G. Campbell, Mary Lou DuSold, Nancy Campbell Dickinson and Walter K. Schmidt, Jr., as guardian ad litem appointed by the Kent County Circuit Court to act on behalf of Carol J. Campbell, Gordon H. Campbell and Sally Jo Campbell, minors.

On October 5, 1956, the Circuit Court for Kent County, Michigan, entered an order allowing the Trustee's first annual account. This order was never appealed, and the time for any appeal therefrom has expired.

Plaintiffs, as Co-Executors of the estate of Kenneth H. Campbell, have filed with the Ottawa County Probate Court five annual accounts and a final account. All the necessary waivers of notice and consents thereto, have been filed and the orders of the Ottawa County Probate Court allowing the annual accounts and approving the final account have been entered. The orders of the Ottawa County Probate Court have never been appealed, and the time for any appeal therefrom has expired.

The Old Kent Bank and Trust Company, successor by consolidation and merger to The Michigan Trust Company, filed annual accountings for the trust referred to above, with the Circuit Court for Kent County, Michigan. All of those documents have been allowed by the court. No appeals have been taken, and the time for any appeal therefrom has expired.

On December 28, 1960, all of the assets of the estate of Kenneth H. Campbell, as shown by the final account of May 20, 1960, plus all income therefrom from May 20, 1960 to December 28, 1960, were distributed to the decedent's widow, Mildred M. Campbell, with the exception of $3,410.77, which was paid to the Internal Revenue Service on account of federal income taxes of said estate for the year

ended April 30, 1960, $440.22 which was paid to the Michigan Department of Revenue on account of Michigan Intangibles Tax for the period from May 17, 1959 to May 20, 1960, and $6,649.81 cash which was withheld and retained as an asset of the estate.

Upon all these facts, there is predicated the single question in this case as to the amount to be allowed as a marital deduction under Section 812(e) of the Internal Revenue Code of 1939, as amended. For the purpose of this discussion, that single question can be subdivided into two issues, the *first* concerning the computation of the amount of property passing to the decedent's surviving widow under Paragraph V of the will, and the *second* concerning the question of whether the property so passing to the decedent's widow under Paragraph V is to be reduced by the death taxes assessed against the estate.

### I.

I shall deal initially with the first issue concerning the computation of the amount of property passing to the decedent's surviving widow under Paragraph V of the will.

The provisions of Paragraph V, as the plaintiffs admit in their brief, may conceivably be subject to more than one interpretation. For although the widow's legacy is to be satisfied out of the probate assets, the question arises as to whether the amount of the legacy is to be computed by reference to the probate assets alone, or by reference to other assets of the decedent as well. If the amount of the bequest is computed by reference to the probate assets alone, the sum passing to the widow under Paragraph V is $117,688.85. If the amount of the widow's legacy is computed by reference to both the probate assets and the trust assets, the sum passing to the widow under Paragraph V is $254,159.49.

The construction placed upon Paragraph V, therefore, makes an enormous difference not only in the amount of the probate assets passing to the widow, but also in the amount of the residue, if any, available for distribution to the residual beneficiaries under Paragraph VI of the decedent's will.

When, on August 28, 1956, plaintiffs, as Co-Executors of the decedent's estate, filed a petition in the Ottawa County Probate Court for construction of Paragraph V of the will, Malcolm G. Campbell, Holly E. Campbell, and The Kenneth H. Campbell Foundation for Neurological Research were all of the residual beneficiaries under Paragraph VI of the will, and thus were all of the persons interested in said petition and adversely affected thereby. All of these persons waived notice of the hearing and consented in writing to the granting of the petition.

The Ottawa County Probate Court, as I have said in the recitation of facts, construed the will to mean that the word "estate" as used in Paragraph V of said will, included the trust assets, and, therefore, the sum of $254,159.49 passed to the widow by reason of the legacy of Paragraph V.

Paragraph V itself merely prescribes a formula by which the amount of a general legacy to the surviving widow can be determined. So, even though the widow's legacy is to be satisfied out of the probate assets, there is still a question of whether or not the amount of legacy is to be computed by reference to the amount of the probate assets alone, or by reference to other assets of the decedent as well. This precise question, however, was answered when the Ottawa County Probate Court decided that the word "estate" as used in Paragraph V of the decedent's will should include the non-probate, or trust assets. It now becomes a question for this court to decide whether or not the decrees of the Ottawa County Probate Court and the Kent County Circuit Court have any effect in determining this federal tax question.

■ That the construction of a will is a matter of state law to be determined by the state courts is a proposition not open to serious dispute. On this point the plaintiffs rely on two cases, Uterhart v. U. S., 240 U.S. 598, 36 S.Ct. 417, 60

L.Ed. 819 (1916), and Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937).

In Uterhart v. U. S., supra, the court said:

"The right to succeed to the property of the decedent depends upon and is regulated by state law * *, and it is obvious that a judicial construction * * * determines not only legally but practically the extent and character of the interests taken by the legatees." At 418 of 36 S.Ct.

In Blair v. Commissioner, supra, where the taxpayer had made assignment of his beneficial interest in a trust, the court said:

"The question of the validity of the assignment is a question of local law. The donor was a resident of Illinois and his disposition of the property in that State was subject to its law. By that law the character of the trust, the nature and extent of the interest of the beneficiary, and the power of the beneficiary to assign that interest in whole or in part, are to be determined. The decision of the state court upon these questions is final. * * * It matters not that the decision was by an intermediate appellate court. * * * In this instance, it is not necessary to go beyond the obvious point that the decision was in a suit between the trustees and the beneficiary and his assignees, and the decree which was entered in pursuance of the decision determined as between these parties the validity of the particular assignment. Nor is there any basis for a charge that the suit was collusive and the decree inoperative. * * The trustees were entitled to seek the instructions of the court having supervision of the trust. * * * To derogate from the authority of that conclusion and of the decree it commanded, so far as the question is one of state law, would be wholly unwarranted in the exercise of federal jurisdiction." 57 S.Ct. at 332.

To these authorities may be added another Supreme Court decision on the question of whether or not a federal statute (in this case, the General Maximum Price Regulations of the United States Price Administrator) must be so interpreted that it will have a uniform operation in all states, irrespective of local law, in matters normally within the state power. Justice Jackson, speaking for the majority in Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635, had this to say:

"The great body of law in this country which controls acquisition, transmission and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state. The custom of resorting to them to give meaning and content to federal statutes is too old and its use too diversified to permit us to say that considerations of nationwide uniformity must prevail in a particular case over our judgment that it is out of harmony with other objectives more important to the legislative purpose." Id. at 643.

The line of authorities upon which the plaintiffs rely in making their argument that the decree of a state court is conclusive in matters like those presented in this case to this court does not end here. Plaintiffs rely upon, and argue, that the instant case is governed by The Nashville Trust Co. v. Commissioner, (CCA6, 1943) 136 F.2d 148.

In Nashville, supra, the issue was whether the language in the decedent's will created a legacy subject to estate taxes, or whether this was merely the recognition of a claim against the estate for services rendered and was thus a deductible item for estate tax purposes. The executors of the estate, having petitioned the chancery court for construction of the will, and after a hearing of the case upon depositions which were in no way controverted, the chancery court held that this language was a recognition of a claim against the estate for services

rendered. The Circuit Court of Appeals held that the state court decree was conclusive with respect to the construction of the will and thus controlling for estate tax purposes. The Court, however, indicating that it might have reached a different conclusion from the one reached by the state court, decided that it was nevertheless obliged to follow the state court's decree.

"But however these considerations might appeal to the trier of the facts, [said the Court] we are not authorized, and we think the board was not authorized, to interfere with the conclusions of the tribunal which heard the evidence and decided the question. The decree, which is unreversed and binding upon the Board and upon us, specifically holds that there was a legal obligation to the amount of the whole value of the stock." Id. at 152.

Ten years later, in the case of Goodwin's Estate v. Commissioner, (CCA6, 1953) 201 F.2d 576, the Sixth Circuit Court of Appeals had an opportunity to discuss this same sort of question. Goodwin's estate involved the binding effect for tax purposes of a probate court decree allowing certain claims against the decedent's estate. The decedent's three daughters had filed claims against the estate totalling $131,652.14. After a petition had been filed in the probate court seeking allowance of these claims, the probate court held the claims to be proper obligations of the estate. The Commissioner refused to recognize the probate court decree and consequently disallowed a deduction for tax purposes by reason of the claim. The tax court sustained the commissioner. On appeal, the Sixth Circuit Court of Appeals reversed, holding that the decree of the probate court was binding and conclusive for tax purposes.

Judge Allen, again writing for a unanimous court, took this occasion to discuss the nature of the proceedings had before the probate court:

"Clearly the Probate Court proceeding was not an active and genuine contest, for every party to the proceeding agreed that the claims were valid. However, the petitioner was a party having an interest adverse to the interests of the daughters. As widow of the decedent, petitioner was entitled to one-third of the net estate administered in the Probate Court after payment of claims against the estate. (Citations omitted.) The three daughters were entitled to share equally in the remainder of the estate. It is undisputed that the payment of the claims of the daughters reduced the distributive share of the widow over $30,000. The amounts paid the daughters upon their respective claims exceeded the distributive share that they would otherwise have received by varying amounts, by far the largest excess over her distributive share having been received by Frances G. Gustafson. The other two daughters therefore had an interest adverse to the allowance of the claim of Frances G. Gustafson. As the estate was solvent, the widow and daughters were the only interested parties in the proceedings with reference to the allowance of claims.

"The decree of the Probate Court was rendered after a hearing of which all parties had notice, and in which oral testimony was taken. While consent to the entry of the decree was given, it was given 'by all parties having an interest adverse to the claimant.' (Citation omitted.) Under the Regulations it is therefore presumed that such consent was a bona fide recognition of the validity of the claim, not a mere cloak for the gift, and was accepted by the court as satisfactory evidence upon the merits. This presumption was not rebutted. Respondent introduced no testimony. If the Regulations are valid, the decree should have been accepted as establishing the validity and amount of the claims." Id. at 580.

The defendant in this case contends that Nashville, supra, is distinguishable

upon its facts because there was a trial on the merits in Nashville, at which testimony was taken and after which the probate court made findings of fact. Goodwin's Estate, supra, the defendant argues, is also distinguishable on its facts because, similarly, there was a trial on the merits at which testimony was taken and findings of fact made by the court.

It is, therefore, important that the nature of the consent decree entered by the Ottawa County Probate Court be examined carefully. True, in this case, there was no active contest regarding the construction of the decedent's will, but the consents were given by persons whose financial interests were adverse to those of the widow. The decedent's brothers, Malcolm G. Campbell and Holly E. Campbell, and The Kenneth H. Campbell Foundation for Neurological Research were the residual beneficiaries of the decedent's estate by virtue of Paragraph VI of the decedent's will, and to the extent that the widow's specific bequest under Paragraph V increased in amount, their residual shares under Paragraph VI diminished.

█ Upon this question of whether or not the consent decree entered by the probate court was binding upon this Court, I think the plaintiffs' arguments must prevail, and one case amply disposes of that question, Gallagher v. Smith, (CCA 3, 1955) 223 F.2d 218. In that case, Judge Maris, over the single dissent of Judge Kalodner, thoroughly discussed the federal tax cases in which state court decisions have been refused controlling effect upon the grounds that they were not *res judicata* in the federal tax case, or because they were regarded as non-adversary, or as in fact consent decrees, or because they were obtained by collusion. There are, as Judge Maris pointed out, at least *three types* of tax cases with repect to which the effect of state decisions may be quite different.

The *first type* of federal tax cases refuses to give state decisions conclusive effect in situations where Congress has imposed a federal criterion with respect to the taxability of income or property, or the allowability of claimed deductions. Id. at 222. The court pointed out that there seemed to be a tendency in this first group of federal tax cases to ignore the basic fact that the state decision did not, and, as against the United States, could not determine whether the criterion laid down by the Internal Revenue Code had been met. On this point the court observed:

"Frequently the courts in rejecting the applicability of a state judgment have stressed its non-adversary or agreed character, thereby giving the *unwarranted* impression that if the judgment of the state court had resulted from a contested litigation it would have been conclusive on the federal question." Id. at 222. (Emphasis supplied.)

A *second type* of case which Judge Maris discussed is that in which the state decision does not involve a peculiar rule of federal tax law, as in the type just discussed, or a determination of the property rights of the parties as in the type about to be discussed, but has merely made a determination of some other question of law or fact asserted to be involved in the federal tax case. Ibid. It is clear that in such cases if the United States was not a party to the state case, then the decision in the state case cannot be *res judicata* against the United States or entitled to full faith and credit in the federal case, even though it may be entitled to consideration as declaratory of state law. On this type of case, Judge Maris concluded:

"Whether the state proceeding was adversary or nonadversary or the judgment was obtained by consent or even by collusion is, on principle, quite immaterial in such a case." Ibid.

The *third type* of federal tax case in which a state decision is sought to be given effect is that in which a state court has determined the rights of the parties to income or other property involved in the tax litigation and the tax is imposed by the Internal Revenue Code solely upon the person entitled to the income or other

property under the state law, the federal law having imposed no qualification upon or criterion for the taxability thereof. "In a case of this sort," said Judge Maris, "the state judgment must be given conclusive effect in determining federal tax liability." Id. at 222–223 (and citations therein included.) The reason for this ruling, as Judge Maris pointed out, is that the right to the income or other property sought to be taxed is created solely by state law:

> "Since by hypothesis no federal qualification or criterion has been imposed and the tax is levied solely upon those in whom the state law has vested the title, the question can only be one of state law. *An adjudication of such a question of title by a court of the state must accordingly be given effect, not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed. So far as those parties are concerned the law of the state is what the state court has declared and applied in their case. If the state court's judgment has binding final effect under the state law the rights of the parties can only be what the court has held them to be. It is for this reason that the federal court should not in a case of this kind make an independent examination and application of state law.* For if it reaches a different conclusion from the state court as to what the parties' rights should be under the state law its decision will not change those rights which will necessarily remain what the state court has declared them to be." Id. at 223. (Emphasis supplied.)

I have dwelt at length on Judge Maris' opinion in Gallagher v. Smith, supra, not because I think that the instant case is a *mixture* of those three types of cases which he discussed. For clearly, this case is a case of the *third type* discussed in Gallagher v. Smith, supra, in which a state decision is sought to be given effect and in which a state court has determined the rights of the parties to income or other property involved in the tax litigation and the tax is imposed by the Internal Revenue Code solely upon the person entitled to the income or other property under the state law, the federal law having imposed no qualification upon or criterion for the taxability thereof.

Plaintiffs, on page 4 of their reply brief, state that "the decree of the Ottawa County Probate Court construing Paragraph V of the decedent's will was a decision upon the merits which directly determined the rights of the parties under state law. It, therefore, conclusively established the setting in which the Internal Revenue Code was to operate and to which it must be applied by this court."

The defendant, on the other hand, at page 5 of defendant's reply brief, taxes the plaintiffs with the argument that the instant case is governed by Michigan Trust Company v. Kavanagh, 284 F.2d 502, in which the Sixth Circuit Court declined to be bound by a decree of the Circuit Court for Kent County. The defendant submits that there is no distinction between the instant case and the Michigan Trust case.

As to the precise grounds why this case should be controlling, one must refer to the defendant's brief at pages 23–24. The defendant's argument runs as follows:

> "The ultimate question which the court must decide in the instant case is whether property has passed from the decedent to the surviving spouse within the definitions and limitations set forth in Section 812(e) of the Internal Revenue Code of 1939. This of course, is a federal question which must be answered without recourse to the law of the state having jurisdiction over the decedent's estate. While we do not dispute that the state law determines what each individual in the estate will receive from the estate, and while it is similarly true that the parties can voluntarily redistribute the assets of the estate among themselves and have

that redistribution approved by the Probate Court, whether or not the property ultimately received by the surviving spouse passed to her from the decedent within the meaning of Section 812(e) of the 1939 Code is a federal question determinable only by recourse to federal law."

To this argument the plaintiffs reply that the question is not whether the property bequeathed to the widow under Paragraph V of the will "passes or has passed from the decedent to his surviving spouse," but the question here rather concerns the *amount* of property so passing from the decedent to his surviving spouse. This question, the plaintiffs argue, can be determined only by reference to the decedent's will, and the decedent's will has only such legal significance as given by state law.

I find myself wholly in accord with the plaintiffs' contention in this regard.

The Government, in effect, argues that the instant case falls within what Judge Maris discussed in Gallagher v. Smith, supra, as the first type of federal tax cases, which refused to give state decisions conclusive effect in situations where Congress has imposed a federal criterion with respect to the taxability of income or property, or the allowability of claimed deductions. The state court in this case did not, and could not, make such a determination. Nor was there any attempt by the Ottawa County Probate Court to make such a determination. That the Ottawa County Probate Court's ruling had an effect upon the ultimate application of the federal criterion is incontestable; but it is one thing to say that it had an effect upon the application of the federal criterion, while it is a wholly different thing to say that it made or attempted to make that determination itself.

The defendant also argues that there was collusion "in the sense that all parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so." This, the defendant argues, is self-evident. Further, the defendant argues that since all the parties consented to the entry of the decrees without hearing, and since it was to their tax advantage to do so, as is apparent from the instant litigation, the only conclusion that can be drawn from this is that there was collusion in the consent decree.

The defendant seeks to mitigate this charge by explaining that "collusion" in this case does not have the pejorative connotation usually carried with that word. The Government had an opportunity to take discovery depositions to substantiate their suspicions in this regard; they chose not to do so. It is rather late now to argue that what began as suspicion, and then ripened into an allegation, wholly unsupported by any substantial evidence in this record, now supports the conclusion that there was *obvious* collusion between the parties.

I think that the defendant's contention in this regard is without foundation in fact or in the evidence in this record. The mere fact that the attorney who filed the waiver of notice and consent on behalf of The Kenneth H. Campbell Foundation for Neurological Research was a member of the law firm which represented the estate of Kenneth H. Campbell is but slight evidence in this regard. Indeed, all the parties, i. e., the decedent's estate, the beneficiaries, including the charity, the trustee of the inter vivos trust, and the guardian ad litem of the minor beneficiaries of the inter vivos trust, were apparently represented by the same law firm, Warner, Norcross & Judd.

And, here again, I quote from Judge Maris' opinion in Gallagher v. Smith, supra. Speaking to the question of whether or not a state judgment obtained by collusion to defeat a federal tax need be given conclusive effect in a suit in federal court involving the tax, Judge Maris wrote:

"[W]e think that the fact that the parties all favored the same result in the state court is relevant only so far as it is evidence of collusion and should not in and of itself vitiate in the federal court such conclusive effect as the state law gives to the

judgment with respect to the property rights determined by it. For if in the absence of fraud such a judgment does determine the rights of the parties in the property they must thereafter live with it so far as their enjoyment of the property is concerned. It is certainly logical, therefore, that such taxation as is based solely upon the ownership of the property should follow such a judgment." Id. at 225.

Judge Maris then continues, giving the policy reasons for that court's conclusion:

"Furthermore we think that our conclusion is soundly based in public policy. *For it is quite common and highly commendable for all the members of a family group interested in a decedent's will to take a common view as to their rights under it, thus promoting family harmony and preventing that unseemly and disturbing spectacle, a family fight over a deceased relative's property.* It is certainly quite proper for the persons interested in a trust estate thus frankly to express to the court which has jurisdiction a common view as to the correct legal solution of any questions which exist as to their rights in the trust. *If the questions are fairly posed to the court and the tribunal is left free to decide them according to its own independent judgment, it should not be necessary for the parties to take formal adversary positions and engage in legal shadow boxing in order that the judgment of the court should have conclusive effect, taxwise as well as propertywise.*" Id. at 225. (Emphasis supplied.)

In the instant case, this sound reasoning grounded on public policy was brought to bear by the action of a single law firm. I can see nothing collusive in such service.

## II.

I pass now to the *second* issue of the single question, concerning the question of whether the property so passing to the decedent's widow under Paragraph V is to be reduced by the death taxes assessed against the estate.

Section 812(e) (1) (E) (i) of the Internal Revenue Code of 1939, as amended, provides:

"In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—(i) there shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value of the surviving spouse of such interest; * * *."

Having determined that the amount of property passing to the decedent's surviving widow under Paragraph V of the will, by reference to both the probate assets and the trust assets, was in the amount of $254,159.49, this court must now determine whether the property so passing to the decedent's widow under Paragraph V is to be reduced by the death taxes assessed against the estate.

Based upon a marital deduction of $306,960.68, the federal estate tax payable by reason of decedent's death amounts to $77,990.73. The Michigan Inheritance Tax as tentatively determined and paid by plaintiffs, amounted to $31,950.40. The death taxes thus total $109,941.13.

Paragraph II of the decedent's will provides that all death taxes are to be paid out of the residue of his estate. A careful reading of Paragraph II of the decedent's will convinces me that the plaintiffs' interpretation, i. e., that the language requires the conclusion that taxes assessed against both the probate assets and the non-probate assets, i. e., insurance, joint property and trust assets, are to be paid from the residue of the probate estate, is a fair construction of that paragraph. As the plaintiffs point out, such a reading is consistent with the construction of Paragraph V,

wherein reference to the testator's property and estate was interpreted to include the trust assets.

██ But here a problem arises because the residue of the probate estate is not adequate to cover these payments. The bequest to the widow under Paragraph V is a general legacy, to be satisfied out of the general assets of the estate. 57 Am.Jur., Wills, Section 1402, at Page 936; Moore and Dennison, Michigan Probate Law and Practice, 2nd Edition, Vol. 3, Section 1774. And the formula of 40% must be applied after the deduction of the prior bequests of Paragraphs III and IV, but "before the deduction of taxes, claims, and administration expenses." Nor is the property encompassed within the bequest of Paragraph V a part of the residue of the estate.

Paragraph VI of the decedent's will disposed of the residue as that portion remaining *after payment of all legacies and after payment of claims and administration expenses.*"

And the residue of an estate has been defined "as that which remains after discharging all legal and testamentary claims of the estate or, in other words, that which is left after the payment of charges, debts, and particular legacies." 57 Am.Jur., Wills, Section 1415, at page 946.

The residue must be determined in accordance with the rule stated above, by deducting all debts, charges and legacies from the probate estate. Computing it this way, the residue amounts to $15,110.66. Since this amount is insufficient to pay in full all of the death taxes as directed by Paragraph II of the will, there is a question of where the ultimate burden of the tax payment must fall. And this, the plaintiffs argue, has an impact upon the federal estate tax, for if the property passing to the widow is to be charged with a portion of the tax burden, then the amount of the marital deduction will be reduced by virtue of Section 812(e) (1) (E) (i), and the federal estate tax will be increased accordingly.

It appears to be the law in this Sixth Circuit that state law governs the placement of the ultimate burden of the death taxes and thus controls the federal estate tax consequences. In Estate of Jaeger v. Commissioner, 27 T.C. 863 (1957), deciding the issue of whether the computation of the marital deduction was one of those certain areas in the application of tax law where the decisions of state courts are controlling, dependent, of course, on the intent of Congress, the Court said:

"Petitioner contends that we are not required to follow the decisions of state courts in the construction and application of Acts of Congress and that in dealing with the question before us, decisions of the Ohio courts are not controlling. Nevertheless, as we see it, there are certain areas in the application of the tax laws where the decisions of state courts are controlling, dependent of course on the intent of Congress * * *. The question before us falls within the area where the state court decisions determine the matter. Section 812(e) (1) (E) (i), Internal Revenue Code of 1939, provides that in determining the value of any interest in property passing to a surviving spouse 'there shall be taken into account the effect which a tax imposed by this Chapter (Federal Estate Tax) * * * has upon the net value to the surviving spouse of such interest;' * * *. In determining the value of the interest of the surviving spouse, it appears to be generally recognized that state law governs as to the effect of the estate tax, * * *." At Page 864.

Affirmed in accordance with the findings of fact and conclusions of law in Estate of Jaeger v. Commissioner (CCA 6, 1958), 252 F.2d 790. Here, again, we have the *third* type of case which Judge Maris discussed in his opinion in Gallagher v. Smith, supra.

Since there is no dispute between the plaintiff and the defendant concerning the question of whether or not the law

of the State of Michigan controls in the instant case, the only question left for my decision is whether or not *Michigan* law will sustain the plaintiffs' arguments in this case.

And my decision in this case is further narrowed by the fact that both parties argue the same case, Knowles v. National Bank of Detroit, 345 Mich. 671, 76 N.W. 2d 813 (1956). In the Knowles case, the testatrix had created during her lifetime four inter vivos trusts which were subject to federal estate taxes upon her death by reason of certain retained interests. Her will, on the subject of tax, provided:

> "*Sixth*: After paying the express legacy above provided, all taxes assessable against my estate, and expenses of administration, the residue or remainder I give and bequeath to my grandson, FREDERICK MUELLER, if he be living at the time of my death and over the lawful age of twenty-one years."

The issue before the court was whether all of the federal estate taxes were to be paid out of the residue of the probate estate, or whether the four inter vivos trusts were to bear their ratable portion.

■ The plaintiffs argue that the court recognized the general rule that the intent of the testator was the governing factor. I think that the plaintiffs' contention must prevail.

True, the court in the Knowles case, supra, did not authorize a rule of equitable apportionment; but the court did say:

> "If reasonably ascertainable, the intent of the testatrix as to who should bear the impact of the Federal estate tax must control. We agree with the trial court that the testatrix meant, by 'taxes assessable against my estate,' to include all Federal estate taxes assessable against her estate, before the residue passed on to her grandson Frederick Mueller. In the absence of a proration statute in this State, and

in the absence of a contrary intention expressed by the testatrix in paragraph 6 of her will, the burden of the Federal estate taxes must fall upon the residuary estate." Id. at 678, 76 N.W.2d at 817.

Neither party in this case contends that there is a pro-ration statute in the State of Michigan; but there is a dispute over the intention of the Testator, as stated in Paragraph V of his will. Since there is no residuary estate sufficient to pay the taxes assessable in the instant case, the burden of the federal estate taxes cannot fall upon the residuary estate. The choice here is, then, as plaintiffs contend, between an equitable apportionment or placing the entire tax burden on the specific bequests provided for under the will, and thus causing abatement of both general and specific legacies.

I think in this case, however, the intent of the testator as to who should bear the impact of the federal estate tax is reasonably clear and ascertainable. That intent, therefore, must control. As to the Michigan Inheritance Tax, it is true, as the plaintiffs argue, that absent a direction in the will, the Michigan Inheritance Tax is not a charge on the residuary estate, but is to be apportioned. M.S.A. 7.562, Comp.Laws 1948, § 205.-202.

■ But when the defendant argues at Page 28 of its brief that "it seems clear that the marital bequest of 40% was to be effective *after* the deduction of death taxes," this is, to say the least, a novel interpretation of Paragraph V of the testator's will, which states expressly, "I give, devise and bequeath outright to her so much of the rest, residue and remainder of my estate * * * as will equal forty per cent (40%) thereof *before deduction of taxes*, claims and administration expenses." (Emphasis supplied.)

One construes when there is doubt, uncertainty, ambiguity, or unclarity. Here there is no need for construction, for the intent of the testator is clear on the face

of the document. The testator intended the legacy to his wife under Paragraph V to pass free from any death taxes. This is what he said. We must presume that this is what he meant. Under Michigan law this intent is controlling and must be given effect.

■ It is clear, however, that under Michigan law there is no statute providing for proration. Nor is there any judicial decision providing for proration. But it is likewise significant to note that there is no statute precluding proration nor judicial decision precluding that same proration. The question, therefore, would seem to be open for a ruling. It is, in this jurisdiction, a *res nova*.

A similar question was discussed in the case In re Gallagher's Will, 57 N.M. 112, 255 P.2d 317. That the question was an open one to that court may be seen from their language:

"When the will is silent on the question, and there is no applicable statute of apportionment, there is a clean split in the authorities on where the ultimate burden of the payment should fall, as regards property which does not pass under the will, with some courts saying it must fall solely upon the residuary estate, and others saying it must be borne ratably by the beneficiaries under the principle of equitable apportionment." Id. at 321.

The court then engages in a discussion of the various theories urged in support of the proposition that where the will was silent on the incidence of the tax burden and in the absence of statutory authorization for apportionment, the entire burden of the tax fell upon the residuary estate. So also does the court discuss certain jurisdictions in which the principles of equitable apportionment have been applied without renouncing the earlier and what has been termed the majority rule. Following its discussion of those cases, the court concludes that the "reasoning of the cases analyzed and others cited declaring for the doctrine of equitable apportionment is sound and

just." Id. at 328. And then the court gives the reasoning for its own ruling in favor of an equitable apportionment:

"We have not tallied the jurisdiction on each side, but although the earlier rule may still represent the majority opinion of jurisdictions passing upon the question, we feel no compunction to adhere inelastically to a rule which in the view of this court is not productive of substantial justice. Certainly the vitality of our legal system derives in large part from the function of our courts in applying its *root* concepts, among them that of equal treatment, to ever new and diversified problems. Accordingly, the action of the lower court in apportioning to the appellant her pro rata share of the tax burden arising from the joint tenancy property is affirmed. Therefore, the rule is nonprobate assets includible in the gross taxable estate shall bear their proportionate share of the burden of the federal estate tax, subject, however, to the power of the testator to make other specific provision." Id. at 328–329.

Cf. Doetsch v. Doetsch, 312 F.2d 323 (CCA 7, 1963). In that case the Seventh Circuit, having decided that they must look to the law of the state of the decedent's domicile, found neither a statute commanding nor one precluding apportionment, nor a judicial pronouncement on the subject. Thus free to rule on the question, the court decided that the domiciliary state *would* adopt the rule of apportionment. And thus free to decide the same question, it is my decision that Michigan also *would* adopt the rule of apportionment.

The marital deduction is, therefore, not reduced by reason of the death taxes. That this was the conclusion and interpretation of the plaintiffs as Co-Executors of Paragraph V of the Will, may be seen from the fact that they demanded and received from the Trust on August 17, 1955, an initial payment of $72,610.-44, representing its estimated share of the federal estate tax on account of the

inclusion of the trust assets in the decedent's taxable estate. The receipt of this sum was reported in plaintiffs' second account as Co-Executors of the estate, which account was duly approved and allowed by the Ottawa County Probate Court.

The remaindermen of the inter vivos trust were the decedent's five nieces and nephews. These persons are not beneficiaries under the decedent's will. The contribution made by the trust for the payment of the federal estate tax was adverse to their financial interests. On or about August 27, 1956, the Michigan Trust Company, as successor trustee to the Superior National Bank & Trust Company of Hancock, filed its first account regarding the inter vivos trust with the Kent County Circuit Court, In Chancery. The account reflected the payment to the decedent's estate of $72,610.-44 for the Trust's estimated share of federal estate taxes. Mary Lou DuSold and Nancy Campbell (Dickinson) filed written consents to the allowance of the account, and Walter K. Schmidt, serving as guardian ad litem for Carol J. Campbell, Gordon H. Campbell, and Sally Jo Campbell, minors, filed his written consent to the allowance of the account. The account was allowed by the order of the Kent County Circuit Court dated October 5, 1956. Persons whose interests were adverse to those of the widow thus expressly recognized the right of the widow to receive her legacy under Paragraph V free from death taxes.

There has been no appeal from the order of the Kent County Circuit Court, and the contention that these consents were inoperative because of collusion between the parties has been disposed of in another section of this court's opinion.

The assets in the amount of $306,-960.68 comprise less than one-half of the adjusted gross estate and thus fully qualify for the marital deduction. As a consequence, there are no federal estate taxes incurred by reason of the property passing to the widow. The federal estate tax is, therefore, assessed by reason of the remaining assets which total $366,-267.26, and consist of the following:

| | |
|---|---|
| Trust assets | $341,176.60 |
| Bequests under Paragraph IV | 10,000.00 |
| Residue of probate estate | 15,110.66 |
| Total | 366,287.26 |

An apportionment of the federal estate tax burden, on these assets in proportion to their respective percentages of the taxable estate, indicates the following division:

| | | |
|---|---|---|
| Trust assets | 93.144% | $72,486.31 |
| Bequests under Paragraph IV | 2.730% | 2,124.53 |
| Residue of probate estate | 4.126% | 3,210.93 |

---

The Michigan Inheritance Tax has been tentatively determined at $31,950.-40. The joint property and insurance passing to the widow are not subject to the Michigan Inheritance Tax. Of the assets passing to the widow, the bequest under Paragraph III of $2,500 and the bequest under Paragraph V of $254,159.-49 are subject to Michigan Inheritance Tax. The Michigan Inheritance Tax assessable by reason of these bequests as computed in accordance with the Michigan Inheritance Tax (M.S.A. 7.562) is $8,732.97. The balance of the Michigan Inheritance Tax is attributable to the other bequests and to the trust assets.

I hold that the testator clearly intended by the language of Paragraph V of his will that the legacy given thereunder to his widow should be free from the burden of death taxes. The law of the State of Michigan requires that this intent be given effect. Thus, under Michigan law, the widow's legacy under Paragraph V is not subject to the burden of death taxes. This, in turn, governs

the application of Section 812(e) (1) (E) (i). The marital deduction is, therefore, properly computed at $306,960.68.

I find the remaining contentions of the defendant so plainly without merit that they require no discussion.